UNITED STATES of America, Appellee,

v.

**Jannazzo D. BOYD, Appellant.**

No. 93–3036.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 22, 1995.

Decided May 30, 1995.

Allen E. Burns, Asst. Federal Public Defender, argued the cause, for appellant. On brief was A.J. Kramer, Federal Public Defender.

Mary D. Rodriguez, Asst. U.S. Atty., argued the cause, for appellee. On brief were Eric H. Holder, Jr., U.S. Atty., and John R. Fisher and Elizabeth Trosman, Asst. U.S. Attys.

Before EDWARDS, Chief Judge; GINSBURG and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Jannazzo D. Boyd appeals his conviction on one count of possessing with intent to distribute more than five grams of cocaine base, in violation of 21 U.S.C. § 841(a) and (b)(1)(B)(iii). Boyd contends he was denied a fair trial because (1) the prosecutor improperly cross-examined him on whether police witnesses had given false testimony and attempted to bolster the officers' credibility during both cross-examination and closing argument and (2) the judge failed to inform the jury that the court reporter could read portions of the testimony for them. For the following reasons we affirm the conviction.

On appeal from a conviction, we must view the evidence in the light most favorable to the government, allowing it the benefit of all reasonable inferences that may be drawn from the evidence and permitting the jury to determine the weight and credibility of the evidence. *United States v. Smith,* 964 F.2d 1221, 1222 (D.C.Cir.1992); *United States v. Butler,* 924 F.2d 1124, 1126 (D.C.Cir.), *cert. denied,* 502 U.S. 871, 112 S.Ct. 205, 116 L.Ed.2d 164 (1991). So viewed the evidence reveals the following facts.

On June 24, 1989 Metropolitan Police Officers Anthony Scarpine, Daniel Shereika and Steven Packard entered an apartment building on Park Road, N.W. in the District of Columbia to investigate complaints of narcotics transactions. After passing through the first-floor hallway, the officers climbed the stairway to the second floor. As Scarpine and Shereika topped the stairs, they saw Boyd emerge from an apartment doorway carrying a brown sack. When Boyd spotted the officers he "froze" for a moment and then threw the sack to the floor. He started back toward the apartment only to encounter a closed door. He then turned around and again started walking toward the officers. Scarpine told Shereika to stop Boyd while he himself retrieved the discarded sack. Inside he found 123 ziplock bags containing a total of 41.3 grams of cocaine base. Boyd was arrested and was later indicted on one count of possessing with intent to distribute more than five grams of cocaine base.

At trial Boyd testified he never had the sack in his possession. According to Boyd, Scarpine told Shereika to hold him for no apparent reason and then "started snooping down" the hallway until he "found" the bag containing cocaine base. Trial Tr. (9/13/89) 89–90. During cross-examination, the prosecutor asked Boyd why Scarpine and Shereika were "making this up." *Id.* at 93. Boyd's counsel responded "I object" and the judge immediately replied "Overruled." *Id.* The prosecutor continued:

Q. Do they have something against you?

A. I don't know them. I know they don't know me.

Q. You have never seen them before?

A. I ain't never seen them before. I'd heard of them before though.

Q. But you had never seen them before?

A. No, I ain't never seen them before.

\* \* \* \* \* \*

Q. So you have never seen those 123 ziplocks? Is that your testimony?

A. Yes that's my testimony.

Q. You never saw that paper bag?

A. No. I didn't.

Q. You didn't walk out of Apartment 25 with that bag in your hand?

A. No.

Q. And these people that are in here putting their lives and their careers—over twenty years for Sergeant Shereika and over seventeen years for Scarpine—they are putting them on the line to get you and you don't even know them.

A. (No response).

*Id.* at 94, 99–100. In closing argument, the prosecutor told the jurors:

Well, now, you're the sole judges of credibility in this matter. It's up to you to decide who to believe—whether you're going to believe Jannazzo Boyd or Officer Scarpine and Sergeant Shereika. It's up to you to decide by looking at the way they testified, by looking at their behavior on the witness stand, and by looking at whether they have a motive for not telling the truth.

Let's look at the motives here. Officer Scarpine and Sergeant Shereika have 38 years of service to this city between them. Does it make sense that they are going to get on the stand and perjure themselves to get Jannazzo Boyd? Does it make sense that they are going to put their careers and their retirement on the line for Jannazzo Boyd, someone that they don't even know, and Jannazzo Boyd said he didn't even know them before this? That they are going to get up there and put on the line all of their time, their lives, and their honesty in order to get Jannazzo Boyd? No, it doesn't make any sense.

And look at it this way. If they were going to make up a story, don't you think they would have made it better? Don't

you think they would have said, "Yes, we found the drugs right in his right front pocket," and don't you think they would have just put it in his pocket, hauled him downstairs in front of all these witnesses that were supposed to be outside and said, "Oh, look what we found."

So why do we end up with a case where something has dropped, a bag? Because that's what happened. That's the truth. They have no reason to make up anything against Jannazzo Boyd.

Trial Tr. (9/14/89) 11–12.

The jury began deliberating at 2:57 p.m. on September 14, 1989. At 4:15 that afternoon the trial judge read counsel a note from the jury asking "Has a transcript of yesterday's trial been prepared and, if so can we have a copy?" *Id.* at 38. The judge informed counsel that he proposed to tell the jurors that "the transcript has not yet been prepared and they are going to have to rely on their collective recollection of the proceedings of yesterday." *Id.* at 38–39. The prosecutor responded "That's fine," while defense counsel said nothing. *Id.* at 39. The trial judge then announced "Hearing no dissent, that's what I will tell them," *id.*, and he did so. The jurors continued to deliberate throughout the afternoon until the court recessed around 6:00 p.m. They resumed deliberations the following morning and returned a guilty verdict at 2:15 that afternoon. Boyd appeals the verdict on the grounds set out above.

■ First, Boyd argues that the prosecutor's cross-examination and closing remarks impermissibly infringed on the jury's right to make credibility determinations. We agree but conclude the error does not merit reversal. "Determinations of credibility are for the jury, not for witnesses." *United States v. Richter,* 826 F.2d 206, 208 (2d Cir.1987) (internal citations omitted). It is therefore error for a prosecutor to induce a witness to testify that another witness, and in particular a government agent, has lied on the stand. *See, e.g., id.* at 208 ("Prosecutorial cross-

examination which compels a defendant to state that law enforcement officers lied in their testimony is improper."); *Scott v. United States,* 619 A.2d 917, 924 (D.C.1993) ("We have repeatedly condemned questioning by counsel which prompts one witness to suggest that he or she is telling the truth and that contrary witnesses are lying."). The prosecutor here did just that. Had she merely asked about Boyd's previous contacts with the officers, allowing the jurors to draw their own conclusions regarding the witnesses' credibility, her examination would have been unobjectionable. She erred, however, in asking Boyd point-blank why the police witnesses would "make up" a story about him.*

■ The prosecutor compounded her error, both in cross-examination and, more extensively, in closing argument, by "vouching" for the police witnesses' credibility, indicating that they would not lie on the stand and thereby jeopardize their careers and risk criminal prosecution. This argument relied on evidence not in the record and was clearly improper. *See United States v. Martinez,* 981 F.2d 867, 871 (6th Cir.1992) (argument that police witness, if lying, would risk 18-year career, without evidence to that effect, was "prosecutorial impropriety"), *cert. denied,* —— U.S. ——, 113 S.Ct. 1874, 123 L.Ed.2d 493 (1993); *United States v. Pungitore,* 910 F.2d 1084, 1125 (3d Cir.1990) (disapproving of "prosecutor's comments that the U.S. Attorneys and law enforcement officers could not have behaved as unscrupulously as defense counsel alleged they did without violating their oaths of office and jeopardizing their careers" because unsupported by record evidence); *Richter,* 826 F.2d at 209 (condemning prosecutor's asking jury why experienced FBI agents would "come into this courtroom and commit perjury and risk their careers to get [the defendant]"); *United States v. Swiatek,* 819 F.2d 721, 731 (7th Cir.) (argument that government agent "had no reason to lie and risk his career and reputation" was "clearly improper when considered

---

* Had Boyd testified on his own that the officers were lying, such questioning might be proper. *See United States v. Cole,* 41 F.3d 303, 309 (7th Cir.1994) (where "[g]enerally throughout his testimony [the defendant] either implicitly or explicitly stated that the government witnesses lied," prosecutor's cross-examination regarding motives for lying was not error).

in isolation, because it amounted to vouching for the credibility of a witness."), *cert. denied*, 484 U.S. 903, 108 S.Ct. 245, 98 L.Ed.2d 203 (1987); *cf. United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (prosecutor's expression of "personal impression" regarding guilt of defendant was improper and error). Nevertheless, the prosecutor's error does not warrant reversing Boyd's conviction.

 Where, as here, the defendant fails to object or to state the specific ground for an overruled objection, we may reverse only for plain error unless the defendant can demonstrate on appeal that the ground for the objection was obvious from the context in which it was made. *See* Fed.R.Crim.P. 51; *United States v. Young*, 470 U.S. 1, 14, 105 S.Ct. 1038, 1045, 84 L.Ed.2d 1 (1985); *United States v. Thomas*, 896 F.2d 589, 590–91 (D.C.Cir.1990); Fed.R.Evid. 103(a)(1). Because nothing in the context of defense counsel's unexplained objection made obvious the ground therefor, we apply the plain error standard of review. "The plain error standard, as recently clarified by the Supreme Court, requires us to determine (1) whether there is unwaived legal error, (2) whether the error is 'plain' or 'obvious' under current law and (3) whether the error was prejudicial." *United States v. Merlos*, 8 F.3d 48, 50 (D.C.Cir.1993) (citing *United States v. Olano*, — U.S. ——, —— –––, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993)). The prejudice prong permits reversal only " 'in those circumstances in which a miscarriage of justice would otherwise result.' " *Olano*, — U.S. at ——, 113 S.Ct. at 1779 (quoting *Young*, 470 U.S. at 15, 105 S.Ct. at 1046). In other words, we "should correct a plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings'." *Id.* (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)) (alteration by *Olano* Court). That is not the case here.

The trial court specifically instructed the jurors that the "statements and arguments of counsel are not evidence," Trial Tr. (9/14/89) at 23, that "[a] police officer's testimony should be considered by [them] just as any other evidence in the case," *id.* at 30, and that "[i]n no event should [they] give either greater or lesser credence to the testimony of any witness merely because he or she is a police officer," *id.* These instructions, combined with the minimal importance of the challenged questions and statements and the absence of any reason for the jury to disbelieve the substantial incriminating testimony of the police witnesses, persuade us that Boyd suffered no prejudice from the prosecutor's improper questions and argument and that there is therefore no plain error to support reversing his conviction. *Cf. United States v. Perholtz*, 842 F.2d 343, 361–62 (D.C.Cir.) (finding no plain error in improper prosecutorial remarks where there was "a strong case against the defendants" and "any possible prejudice was cured by the trial judge's instructions that arguments of counsel are not evidence"), *cert. denied*, 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988); *United States v. Martinez*, 981 F.2d at 871 (no prejudice where prosecutorial vouching was "isolated" and any possible prejudice was "ameliorated by the trial court's instruction to the jury that 'the lawyers' statements ... and their arguments are not evidence'") (elipsis in original).

 Next, we find no error in the trial court's failure to advise the jury sua sponte that, although no transcript had been prepared, the court reporter could read it portions of the testimony. A trial court enjoys broad discretion in responding to jury questions generally, *Salzman v. United States*, 405 F.2d 358, 361 (D.C.Cir.1968), and especially in deciding whether to provide requested testimony either in written form, *United States v. Betancourt*, 838 F.2d 168, 175 (6th Cir.), *cert. denied*, 486 U.S. 1013, 108 S.Ct. 1748, 100 L.Ed.2d 210 (1988); or as read by a court reporter, *United States v. Akitoye*, 923 F.2d 221, 226 (1st Cir.1991); *United States v. Castillo*, 866 F.2d 1071, 1084 (9th Cir.1988). The court's failure here to advise the jurors that the court reporter could read testimony to them was not an abuse of its discretion, particularly given defense counsel's acquiescence in the judge's chosen course.

For the preceding reasons, the appellant's conviction is

*Affirmed.*