USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________ No. 95-1719 UNITED STATES OF AMERICA, Appellee, v. DENNIS SULLIVAN, Defendant, Appellant. ____________________ No. 95-1760 UNITED STATES OF AMERICA, Appellee, v. THOMAS PLATT, Defendant, Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Morton A. Brody, U.S. District Judge] ___________________ ____________________ Before Selya, Stahl and Lynch, Circuit Judges. ______________ ____________________ Judith H. Mizner for appellant Dennis Sullivan. ________________ Perry O'Brian for appellant Thomas Platt. _____________ Margaret D. McGaughey, Assistant United States Attorney, with ______________________ whom Jay P. McCloskey, United States Attorney, was on brief, for _________________ appellee. ____________________ May 31, 1996 ____________________ -2- LYNCH, Circuit Judge. An armed robbery of the LYNCH, Circuit Judge. _____________ Country Hospitality Inn in Bangor, Maine in 1994 that netted the robbers approximately $520 was prosecuted federally. Defendant Dennis Sullivan was sentenced for the crime to spend almost the next thirty years of his life in prison. Defendant Thomas Platt was sentenced to more than thirty years. They appeal, ably arguing that the prosecutor was overly zealous, the evidence insufficient and the instructions deficient. While the prosecutor overstepped in asking one witness to comment on the truthfulness of another's testimony, the misstep was harmless error. The prosecution presented enough evidence to prove its case and the instructions contained no error. We affirm. I Two masked men, one with a sawed-off shotgun, robbed the Inn in the early morning of July 28, 1994. The Inn's night manager was faced with the shotgun by a man who jumped over the countertop and told the manager to look straight ahead and not at him. Startled, the manager did not get a full look at the robber. He did get a good enough look to testify that the robber was a man of medium build, between 5'8" and 5'10" high, weighing between 140 and 160 pounds and in his early to mid-twenties. The robber wore some sort of ski mask, or combination of masks, and dark clothing. The manager heard, but did not see, a second robber. The robbers -3- -3- took the manager's checkbook, his $160 in cash, and his grocery store and bank cards. The robber with the gun asked the manager where the Inn's money was. The manager told him it was in a drawer. The second robber said that he had gotten the drawer open and the robbers took the $360 inside. The robbers told the manager to lie down on the floor. They taped his eyes and mouth shut with duct tape and fled. Shortly thereafter, the police stopped a car with four men but released them. In the car were the defendants and two companions, Dale Braley and Timothy Boudreau. Braley and Boudreau eventually became cooperating witnesses. Meanwhile the investigation proceeded. A police dog followed the robbers' scent across the field around a barn next to an abandoned house. At the house the police observed tire tracks from a car that had rapidly accelerated. Later, a citizen observed a maroon bag on a nearby roadside and told the police about it. The bag contained, among other things, a sawed-off shotgun, a locked box with a shoulder holster inside of it, two masks, dark sweatshirts and camouflage hats. It also contained the rest of the roll of the duct tape used to bind the manager, the manager's checkbook and his bank cards. The bag had a tag bearing the name "Angela Turner." Ms. Turner, it turned out, was Platt's girlfriend. -4- -4- The scheme unravelled. The police followed leads to Braley and Boudreau, who incriminated Platt and Sullivan while minimizing their own roles in the crime. Hearing the police were looking to question them, Platt and Sullivan disappeared. But when arrest warrants were issued, they surrendered. Sullivan and Platt were charged with conspiracy to obstruct commerce by robbery in violation of 18 U.S.C.  1951, obstructing commerce and attempting the same by committing robbery in violation of 18 U.S.C. 1951 and 2, and using or carrying a firearm in relation to a crime of violence, and aiding and abetting the same, in violation of 18 U.S.C. 924(c) and 2. Platt and Sullivan were each charged individually with possession of a firearm not registered to them in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. 5861(d) and 5871. They were also each charged individually with being felons in possession of firearms, in violation of 18 U.S.C. 922(g)(1), 924(a)(2) and 924(e)(1). They were convicted on all counts save for Sullivan's acquittal on the two firearm possession counts. It was clear that the four men were connected with the crime and two had actually committed it. The question was which two. At trial the theory of defense was that Braley and Boudreau had done it and that there was no -5- -5- reliable identification of the defendants. While a footprint was found on the Inn manager's countertop, it did not appear to belong to either Sullivan or Platt and the police did not do the work to identify whose footprint it was.  At trial, Braley testified that the foursome had decided to commit a crime and went riding around in a car. Braley and Boudreau both said that Sullivan, who had worked as a pizza delivery person, mentioned that the Inn would have only one employee there and would be a good target for a robbery. Braley testified that they drove to the abandoned house near the Inn. Sullivan and Platt donned masks and camouflage gear and walked across a field toward the Inn. Later, Sullivan and Platt returned. They "dash[ed]" into the car and told Braley to get out of there because they had seen a cop. In the car, Sullivan said, "I got that guy good." While holding his finger up to the back of Braley's head as if he were pointing a gun, Sullivan said he had jumped over the motel counter and told the night manager to "[g]et right down on the ground." After the group had driven about eight miles, they noticed a police car coming toward them and, afraid they might be stopped, tossed the maroon bag out the window.  The girlfriends of the defendants implicated them in the crimes, but attempted to recant those statements at trial. Braley and Boudreau acknowledged they had been -6- -6- charged with involvement with the robbery in state court. Another witness, Vaughn Stevenson, testified that Platt wanted to purchase the sawed-off shotgun and that Stevenson, who acted as middleman for the transaction, got the weapon from the seller and put it into Platt's closet. Stevenson's friend, Danny Cray, also testified that Platt said he wanted to purchase the shotgun and that Stevenson had delivered the shotgun to the place where Platt was living. Sullivan argues that the evidence was insufficient to support his conviction of using or carrying a firearm in connection with a crime of violence, particularly in light of his being acquitted on the charges of possession of an unregistered firearm and being a felon in possession of a firearm. Sullivan also argues the instruction on reasonable doubt was in violation of his due process rights and that several prosecutorial actions, including the prosecutor's asking Sullivan to comment on the veracity of another witness's testimony, violated due process. Finally, under different labels he attempts to mount an ineffective assistance of counsel claim.  Platt argues that the district court erred in permitting the prosecutor to question Sullivan as to whether the other witness lied. In addition, he argues that a statement made by the prosecution in opening argument -7- -7- violated his Fifth Amendment rights and that there were evidentiary errors.  We treat each defendant's claims separately. II Sullivan ________ Sufficiency of the Evidence ___________________________ In assessing a challenge to the sufficiency of the evidence, we "review the record to determine whether the evidence and reasonable inferences therefrom, taken as a whole and in the light most favorable to the prosecution, would allow a rational jury to determine beyond a reasonable doubt that the defendants were guilty as charged." United ______ States v. Mena-Robles, 4 F.3d 1026, 1031 (1st Cir. 1993), ______ ___________ cert. denied, 114 S. Ct. 1550 (1994). _____ ______ Sullivan's assertion that there was not enough evidence to show he carried or used the shotgun stresses two points. First, Sullivan says, it is undisputed that the gun belonged to Platt and that the night manager did not see who carried the gun. He claims no other evidence linked him to the gun. Second, he says that the weakness of the evidence is revealed by the jury's acquitting him of being a felon in possession of a firearm and of possessing an unregistered weapon.  As to the latter, "'[v]erdict inconsistency does not indicate that the government necessarily failed to prove -8- -8- an essential element of its case beyond a reasonable doubt.'" United States v. Calderon, 77 F.3d 6, 10 (1st Cir. 1996) ______________ ________ (quoting United States v. Lopez, 944 F.2d 33, 41 (1st Cir. _____________ _____ 1991)); see also United States v. Powell, 469 U.S. 57 (1984). ___ ____ _____________ ______ An inconsistent verdict does not require vacating a criminal conviction as long as the appellate court is satisfied that there was sufficient evidence to sustain the counts of conviction. See Calderon, 77 F.3d at 10. ___ ________ A jury could well have found that Sullivan actually carried or used the gun himself or, at the least, knowingly aided or abetted the carrying or use of the gun. It was clear that at least one of the robbers carried the sawed-off shotgun. The night manager testified that the robber who accosted him brandished a shotgun. That robber "used" the firearm. See Bailey v. United States, 116 S. Ct. 501, 508 ___ ______ ______________ (1995). A reasonable jury could have found that Sullivan was that robber. Braley testified that after the robbery, in the car, Sullivan put a pretend gun to Braley's head, apparently imitating what he had done to the night manager. And, there was testimony that Sullivan, in advance of the robbery, while at Platt's home, picked up the gun and commented that it would be good to use in a robbery. The evidence showed that the two robbers walked across the field to the Inn. It is reasonable to infer that the gun was brought to the Inn by one or both and that the two robbers were each aware of the -9- -9- shotgun and its intended use. A sawed-off shotgun is hardly inconspicuous.1 The gun was brought back from the robbery and put in the bag later abandoned by the four men in the car. In the bag were the masks and camouflage garments also used in the robbery. The evidence was sufficient to show that Sullivan knew the shotgun would be used or carried during the robbery and that he took some action intending to cause the gun to be used or carried. See United States v. ___ _____________ Luciano-Mosquera, 63 F.3d 1142, 1150 (1st Cir. 1995), ________________ petition for cert. filed, 64 U.S.L.W. 3765 (U.S. Apr. 26, ________ ___ _____ _____ 1996) (No. 95-1775); see also United States v. Price, 76 F.3d ___ ____ _____________ _____ 526, 529-30 (3d Cir. 1996) (The "[accomplice without the gun] probably knew in advance, and most certainly knew at the time, what [the one with the gun] was doing."); United States _____________ v. DeMasi, 40 F.3d 1306, 1316 (1st Cir. 1994) (one can be ______ held liable under aiding and abetting theory if he knew that weapons would be used during the robbery), cert. denied, 115 _____ ______ S. Ct. 947 (1995). The jury could have found actual knowledge and thus could easily have found that Sullivan knew  ____________________ 1. United States v. Spinney, 65 F.3d 231, 238-39 (1st Cir. _____________ _______ 1995), which vacated the firearms conviction of an accomplice, is, on its facts, inapposite. The firearm in Spinney was a handgun that was not visible when the robber _______ entered the bank and the accomplice charged with aiding and abetting remained outside of the bank. Moreover, in Spinney, _______ the use of the gun was not contemplated at the planning stages, while here the jury could infer that it was. -10- -10- to a "practical certainty" that the gun would be used. See ___ United States v. Spinney, 65 F.3d 231, 238 (1st Cir. 1995). _____________ _______ Reasonable Doubt Instruction ____________________________ Although he did not object to the reasonable doubt instruction at trial, Sullivan attempts to attack the instruction on appeal. As a result, he must meet the strictures of plain error review. See Fed. R. Crim. P. ___ 52(b); Luciano-Mosquera, 63 F.3d at 1156. In this instance ________________ the standard of review does not alter the outcome because there was no error in the instruction. The judge instructed the jury as follows: Now, as I have indicated to you, the government has the burden of proving the defendants guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases and when you were told that it is only necessary to prove that a fact is more likely true than not true, in a civil case, that's the burden. In criminal cases, the government's proof is subject to a higher standard. It must be beyond a reasonable doubt. Now, there's been several suggestions made to you during the course of argument with regard to reasonable doubt. And I point out to you that the lawyers have the right, indeed the responsibility, to point out to you those facts or that evidence or those interpretations of legal principles that is more persuasive to their side of the case. I instruct you that, if what I am telling you about the law differs in any way with what the lawyers have told you about the law, I'm instructing you to follow the law as I give it to you and not as the lawyers suggest[] it may be if there is a difference. -11- -11- "Reasonable doubt" has now been defined for you in several different ways by counsel, and I instruct you that reasonable doubt defines itself -- a doubt that is reasonable. It has a plain meaning, and you as jurors can consider the plain meaning of reasonable doubt with what the words say. The only caveat that you must be clear about as it relates to reasonable doubt is that the government must prove the guilt of each of the defendants for the crimes involved beyond a reasonable doubt as you interpret that term. The judge thus left the fine tuning of the meaning of "reasonable doubt" to the jurors, as is appropriate under our precedent. See United States v. Cassiere, 4 F.3d 1006, 1024 ___ _____________ ________ (1st Cir. 1993).  Sullivan says that by referring to the definitions given by counsel, the judge incorporated erroneous definitions. The argument suffers from three flaws. First, that is not a fair reading of the instruction, which told the jurors what the judge's instructions were. Second, the _______ reference to counsel's definitions was followed immediately by a statement that the judge's instructions on the law were to be followed, and, if there were differences, not the lawyers'. Third, to the extent that Sullivan's argument rests on the premise that his own counsel gave an erroneous definition of reasonable doubt, we will not entertain such an argument. Cf. United States v. Munson, 819 F.2d 337, 342 ___ _____________ ______ (1st Cir. 1987) (no plain error in admitting certain -12- -12- testimony when, among other problems, the testimony was elicited by defense counsel on cross-examination). Ineffective Assistance and Due Process Claims _____________________________________________ Sullivan combines three arguments, tied together by the common theme that his counsel at trial was ineffective. For several reasons, ineffective assistance claims are not usually heard on direct appeal. See United States v. Diaz- ___ _____________ _____ Martinez, 71 F.3d 946, 953 (1st Cir. 1995); United States v. ________ _____________ Collins, 60 F.3d 4, 7 n.1 (1st Cir. 1995). There is no _______ reason here to depart from that rule.  To the extent he makes claims independent of the ineffective assistance of counsel claim, they fail on their own. Sullivan complains that, despite Platt's objection which resulted in excluding the evidence, the evidence should have been admitted that Platt and Braley committed a robbery of the Econolodge the week before the robbery of the Inn. Sullivan urges that the evidence would have been useful to impeach Braley. Failing that, he says, severance was warranted.  His initial hurdle is that he never sought to cross-examine Braley about the Econolodge matter, and he objected to the government's request to present such evidence. Moreover, he never asked for a severance. At best, review of his contentions is for plain error. In a strange twist, the parties now reverse the positions they -13- -13- held in the trial court with the government saying the evidence was cumulative and Sullivan saying it should have been admitted. Switching of position aside, this was a matter of discretion for the trial judge and the decision hardly requires reversal as plain error. See United States ___ _____________ v. Innamorati, 996 F.2d 456, 478 (1st Cir.), cert. denied, __________ _____ ______ 114 S. Ct. 409 (1993). The same is true for the alleged error in failing to sever the trials. Cf. United States v. ___ _____________ Edgar, No. 95-1190, slip op. at 8 (1st Cir. Apr. 19, 1996) _____ (failure to sever reviewed for abuse of discretion); United ______ States v. Nason, 9 F.3d 155, 158 (1st Cir. 1993), cert. ______ _____ _____ denied, 114 S. Ct. 1331 (1994) (same). There was strong ______ evidence of guilt in this case. Sullivan's convictions do not rise to a "miscarriage of justice." See Edgar, No. 95- ___ _____ 1190, slip op. at 27 n.16. Sullivan's second argument of trial error is also raised by Platt. Through a series of questions, reproduced in the margin,2 the prosecutor asked Sullivan whether  ____________________ 2. Q: So, I take it you would deny that you ever stated to Vaughn Stevenson that you wished you didn't have so many people involved in the robbery? A: You take it I deny that? Q: Yes. A: I certainly do, yes. Q: I take it that, when Vaughn testified to that, you would say he was lying? A: I'd say -- [Defense counsel]: Objection, your Honor. . . . . The Court: Objection's overruled. He can answer. It's cross- -14- -14- another witness, Vaughn Stevenson, had lied when Stevenson said that Sullivan complained that he wished he didn't have so many people involved in the robbery. This court stated in United States v. Akitoye, 923 F.2d 221, 224 (1st Cir. 1991), ______________ _______ that this type of questioning was improper. Other courts have said the same. See United States v. Boyd, 54 F.3d 868, ___ _____________ ____ 871 (D.C. Cir. 1995); United States v. Scanio, 900 F.2d 485, _____________ ______ 492-93 (2d Cir. 1990), overruled on other grounds, Ratzlaf v. __________________________ _______ United States, 510 U.S. 135 (1994). If there was any ______________ ambiguity left after Akitoye, we state the rule now _______ emphatically: counsel should not ask one witness to comment on the veracity of the testimony of another witness. As was explained in Akitoye: _______ It is not the place of one witness to draw conclusions about, or cast aspersions upon another witness' veracity. The "was-the-witness-lying" question framed by the prosecutor in this case was of that stripe. It should never have been posed . . . .  ____________________ examination. A: Could I have the question again? Q: Vaughn Stevenson testified that you told him, while you were riding in his car shortly after the robbery, that you told him that you wished you hadn't had so many people involved in the robbery. A: Uh-huh. And you want my opinion as to whether he lied? Q: And you're saying -- I take it you would say that that was a lie, that you never said anything like that. A: You take that correctly, yes. -15- -15- 923 F.2d at 224 (citations omitted). We expect that the office of the United States Attorney3 and other counsel will abide by the rule. The prosecution next misreads a line of cases primarily from the Second Circuit and suggests that this non- comment rule applies differently depending on whether the other witness is a police officer or a lay witness. Compare _______ Boyd, 54 F.3d at 871 ("It is . . . error for a prosecutor to ____ induce a witness to testify that another witness, and in particular a government agent, has lied on the stand.") and ___ United States v. Richter, 826 F.2d 206, 208 (2d Cir. 1987) ______________ _______ ("Prosecutorial cross-examination which compels a defendant to state that law enforcement officers lied in their testimony is improper.") with United States v. Gaind, 31 F.3d ____ _____________ _____ 73, 77 (2d Cir. 1994) ("[T]he opposing witnesses in this case were former [employees of defendant's business], not government agents.") and Scanio, 900 F.2d at 493 ("While the ___ ______ rule barring this type of cross-examination is not limited to situations where the defendant is asked to comment on the testimony of government agents, . . . we have shown special concern with prosecutors utilizing what some persons perceive as the heightened credibility of government agents . . . ."  ____________________ 3. Appellate counsel for the United States assured the court at oral argument that attorneys in the Office of the United States Attorney in Maine would promptly be instructed that such questions are improper. -16- -16- (internal citations omitted)). The rule only applies, the prosecution says, when the other witness is a police witness, not a lay witness. We make no such distinction, nor does the Second Circuit.4 That erroneous reading misunderstands the purpose of the rule. The rule reserves to the jury questions of credibility and thus makes it improper to induce a witness to say another witness lied on the stand. See Boyd, 54 F.3d ___ ____ at 871. That this rule was violated by the prosecution is not the end of the analysis. The question is whether the violation of the rule was harmless. In context, it certainly was. While evidence of guilt is only one factor to be considered, such evidence was very strong. See generally ___ _________ Harry T. Edwards, To Err Is Human, But Not Always Harmless: ___________________________________________ When Should Legal Error Be Tolerated?, 70 N.Y.U. L. Rev. 1167 _____________________________________ (1995). Two witnesses testified that Platt and Sullivan committed the robbery and four witnesses tied Platt to the shotgun. Moreover, the error was on a minor point: whether Sullivan in his testimony would say another witness was lying  ____________________ 4. The distinction the Second Circuit draws is in evaluating whether the error is harmless once the rule is violated. Whether a witness is a government agent may be relevant in determining whether there is prejudice or a miscarriage of justice. See Gaind, 31 F.3d at 77 (in reviewing for ___ _____ "miscarriage of justice," court believed that questions did not alter the outcome of the trial); Scanio, 900 F.2d at 493 ______ ("[T]he government's attempt to compel [defendant] to comment on [witness's] veracity was improper; however, we believe any error was harmless."). -17- -17- when the witness said Sullivan had complained about too many people being involved in the robbery. The other witness testified to Sullivan's complaint; Sullivan denied making it. The damage to Sullivan's defense came from Stevenson's direct testimony. That there was a contradiction between that testimony and Sullivan's was obvious. Pointing out the obvious most likely scored the government, at most, rhetorical points. We cannot say that these few largely rhetorical questions from the prosecutor affected at all the outcome of the trial. Cf. United States v. Wihbey, 75 F.3d ___ _____________ ______ 761, 771 (1st Cir. 1996) (improper conduct on part of prosecutor not implicating a constitutional right does not require reversal unless it affected the outcome of the trial). Sullivan also argues that some of the comments made by the prosecution in its closing argument were improper vouching for the credibility of certain witnesses. The prosecutor argued: The government would suggest that, again, Tim Boudreau, if you assess his believability on the witness stand, he came off pretty believable. But you have to make that judgment, ladies and gentlemen. . . . The government suggests to you [Cray] couldn't have lied about anything up on the witness stand. He couldn't -- if he was lying, he couldn't even remember his own name. And on rebuttal, the prosecutor argued: -18- -18- The government suggests . . . that they were up there telling the truth. . . . . . . . [Braley] told you the truth. . . . . . . . . . . The government suggests that . . . Braley, . . . Stevenson, and . . . Boudreau . . . are telling the truth in this case. As there was no objection, we review for plain error. See ___ United States v. Cruz-Kuilan, 75 F.3d 59, 62 (1st Cir. 1996). _____________ ___________ While some of the statements may have been an appropriate response to the defendants' attack on the government witnesses' credibility, see id., others may have ___ ___ crossed the line into improper vouching. See Wihbey, 75 F.3d ___ ______ at 771-73 (comment that "what they have done is testified . . . truthfully about what they knew" was improper vouching); United States v. Manning, 23 F.3d 570, 572 (1st _____________ _______ Cir. 1994) (improper witness vouching for prosecutor to argue: "If [police witness] is going to come in and lie to you he could have done that very, very easily. There's a million little ways they could have given it to the Defendant. But they cannot. The prosecution witnesses cannot engage in that kind of conduct. They're bound by the truth. . . . They're bound by their oath and limits of honesty."). Nevertheless, no miscarriage of justice resulted and the comments did not impact the fairness, integrity or public reputation of the judicial proceedings and so should not be noticed as plain error. See Collins, 60 F.3d at 7. ___ _______ -19- -19- III Platt _____ Prosecutor's Opening Statements _______________________________ Platt argues that the prosecutor's statement in opening that the jury would "meet" the two defendants was an improper comment on whether the defendants would testify. Sullivan objected to the comment and at the end of the opening, Platt moved for a mistrial. The district court denied the motion, but offered to give a cautionary instruction. Apparently for strategic reasons, the defendants rejected the offer.  Whether the prosecutor's argument violated the Fifth Amendment privilege against self-incrimination is reviewed de novo. United States v. Hardy, 37 F.3d 753, 756 _______ _____________ _____ (1st Cir. 1994). We review the denial of the motion for mistrial for abuse of discretion. See Wihbey, 75 F.3d at ___ ______ 773. There was no violation of the Fifth Amendment here.  "A prosecutor's comment is improper where, under the circumstances of the case, the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." Hardy, 37 F.3d at _____ 757 (internal quotations omitted). Sullivan's counsel agreed that the choice of words was not deliberate: the prosecutor meant to say that the defendants would be introduced to the -20- -20- jury. And in fact, the defendants' lawyers did introduce the defendants to the jury after the prosecutor made the allegedly offending remark. In context, the prosecutor's word choice did not "naturally and necessarily" comment on the defendants' privilege against self-incrimination. Cf. ___ Hardy, 37 F.3d at 757-58 (holding that prosecutor's statement _____ that defendants, who were sitting in the courtroom but did not testify, were "still running and hiding today" violated the Fifth Amendment (emphasis removed)). Thus, there was no prosecutorial misconduct that would warrant considering mistrial. Sufficiency of the Evidence ___________________________ Platt also makes a claim that the evidence was insufficient to support his conviction. Platt argues that the evidence implicating him as one of the two robbers came principally from Braley and Boudreau. Those two, Platt argues, should not have been believed because they were cooperating witnesses who gave inconsistent versions of the events that transpired on July 28, 1994. However, "'[c]redibility determinations are uniquely within the jury's province, and we defer to the jury's verdict if the evidence can support varying inferences.'" United States v. Calderon, _____________ ________ 77 F.3d 6, 10 (1st Cir. 1996) (quoting Cruz-Kuilan, 75 F.3d ___________ at 62). As the recital of the facts shows, there was ample evidence to convict Platt on all counts. -21- -21- Other Evidentiary Issues ________________________ Platt argues that the district court erred in excluding the prior misdemeanor and juvenile convictions of certain government witnesses and that the district court abused its discretion by allowing cross-examination of Sullivan on a prior robbery conviction. We have considered Platt's arguments and find no abuse of discretion.5 Finally, Platt argues that evidence that Boudreau had no prior criminal convictions should not have been admitted. Platt argues that the evidence was admitted in violation of Fed. R. Evid. 608 to show Boudreau's good character. Cf. Government of Virgin Islands v. Grant, 775 ___ _____________________________ _____ F.2d 508, 510-12 (3d Cir. 1985) (such evidence inadmissible under Rules 404 and 405 to prove character of accused). The record shows that it was admitted to further develop Boudreau's background and it was thus within the discretion of the district court. Cf. United States v. Blackwell, 853 ___ _____________ _________  ____________________ 5. Platt seeks a stricter standard of review for the district court's exclusion of one witness's misdemeanor conviction for theft by arguing that it "involved dishonesty" and thus should have been admitted under Fed. R. Evid. 609(a). See United States v. Tracy, 36 F.3d 187, 192 (1st ___ _____________ _____ Cir. 1994) (district court does not have discretion to exclude prior convictions involving dishonesty for impeachment purposes), cert. denied, 115 S. Ct. (1995). _____ ______ Theft, on particular facts, could conceivably be a crime of dishonesty, if it involves some element of deceit, untruthfulness, or falsification. See id.; United States v. ___ ___ _____________ Mejia-Alarcon, 995 F.2d 982, 989 n.7 (10th Cir.), cert. _____________ _____ denied, 114 S. Ct. 334 (1993). But Platt points to nothing ______ in the record to support his assertion that the theft here was a crime of dishonesty. -22- -22- F.2d 86, 88 (2d Cir. 1988) (error to strike background evidence that defendant had no prior arrests); Grant, 775 _____ F.2d at 513 (trial court has wide discretion as to admission of background evidence). There was no abuse of discretion here. Affirmed. _________ -23- -23-