# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2763

_____

Dennis Lamar,                              *
                                           *
        Appellant,                         *
                                           *   Appeal from the United States
    v.                                     *   District Court for the Southern
                                           *   District of Iowa.
L. W. Graves, Jr., Warden,                 *
                                           *
        Appellee.                          *

_____

Submitted:  January 15, 2003

Filed:  April 17, 2003 (Corrected: April 30, 2003)

_____

Before LOKEN,[*] FAGG, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Dennis Lamar was convicted in state court of first degree murder and three counts of first degree robbery. After the state court denied Mr. Lamar's appeal and his requests for post-conviction relief, he filed a petition under 28 U.S.C. § 2254. The district court[1] denied his petition and he appealed. We affirm.

---

[*]The Honorable James B. Loken became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2003.

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

On the day of the robbery, Mr. Lamar told Thomas Gladson that he planned to rob a grocery store in Newton, Iowa, and asked him to be his driver. Mr. Gladson initially declined, but both of them then armed themselves and drove together to the store in question. Mr. Lamar went in and robbed the store employees at gunpoint, and Mr. Gladson waited in the car. While Mr. Lamar was inside, the store alarm went off and three police officers arrived at the store parking lot. As Mr. Lamar attempted to leave the scene a gunfight with the police ensued, and Officer Daniel McPherren was killed. When Gladson was arrested the gun that fired the fatal shot was in his possession.

In this appeal, Mr. Lamar contends that he received ineffective assistance of counsel and that the state engaged in prosecutorial misconduct. Mr. Lamar may not obtain relief unless the state court's adjudication of his claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the [United States] Supreme Court." 28 U.S.C. § 2254(d).

I.

Mr. Lamar contends that his right to the effective assistance of trial counsel was denied in several respects. As a general rule, to succeed on a claim of ineffective assistance of counsel the defendant must establish both "that counsel's representation fell below an objective standard of reasonableness," and that but for counsel's deficiency there is "a reasonable probability that ... the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). But Mr. Lamar argues that in this case the state court should have applied the principle established in *United States v. Cronic*, 466 U.S. 648, 659 (1984), namely, that prejudice need not be proven when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." The difference between the ineffectiveness of counsel in cases governed by *Strickland* and those governed by *Cronic* is a difference in "kind" rather than simply "degree," and the *Cronic* standard applies only

if counsel's failure to test the prosecution's case is "complete." *See Bell v. Cone*, 122 S. Ct. 1843, 1851 (2002).

Here, after carefully reviewing the record, we conclude that Mr. Lamar's trial counsel repeatedly challenged the prosecution's case, and that those aspects of Mr. Lamar's counsel's performance that he questions are not different in kind from attorney's actions that the Supreme Court has "held subject to *Strickland*'s performance and prejudice components," *cf. Bell*, 122 S. Ct. at 1851-52. The state court therefore correctly relied on the standard in *Strickland* to deal with his ineffective-assistance claims.

Mr. Lamar argues, in the alternative, that even under *Strickland* his counsel's performance was ineffective in several respects. We address each of these claims in turn.

## II.

Mr. Lamar first claims that his counsel should have more thoroughly questioned a witness about the statements of his co-defendant, Mr. Gladson. In Iowa, first degree murder may be proved against one participant in a robbery by showing that another participant killed an individual with malice aforethought, *see State v. Ragland*, 420 N.W.2d 791, 793-94 (Iowa 1988)*; see also* Iowa Code Annot. §§ 707.2(2), 702.11.1, and felony murder was submitted to the jury as a basis for Mr. Lamar's conviction. At trial, Mr. Lamar admitted to committing the robbery, but contended that Mr. Gladson, who had escaped from prison, shot Officer McPherren to avoid capture, and that he (Mr. Lamar) could not be guilty of felony murder because he and Mr. Gladson were not co-participants in a felony. In support of this contention, Mr. Lamar's counsel elicited witness testimony that when Mr. Lamar asked Mr. Gladson to participate in the robbery, Mr. Gladson emphatically refused.

Mr. Lamar argues that counsel should have elicited testimony that Mr. Gladson repeatedly expressed his lack of interest in Mr. Lamar's plan. In Iowa, a person participates in an offense "during part or the entire period" from the first act "toward the commission of the offense" until "the person has been arrested or has withdrawn from the scene," Iowa Stat. Ann. § 702.13; *see also State v. Liggins*, 557 N.W.2d 263, 267 (Iowa 1996). Here, after declining to assist Mr. Lamar, Mr. Gladson, aware of Mr. Lamar's intentions, armed himself, rode to the grocery store with Mr. Lamar, waited for him in the car behind the store, and shot at the police as Mr. Lamar left the store. Based on these facts the jury was, of course, free to believe that Mr. Gladson was participating in the robbery. The state court concluded that there was no reasonable probability that additional testimony about Mr. Gladson's initial reluctance to participate in the robbery would have changed the jury's verdict. *See Strickland*, 466 U.S. at 694. In so doing, we think that the court reasonably applied clearly established law as set forth in the decisions of the Supreme Court.

## III.

We also reject Mr. Lamar's claim that his trial counsel should have consulted with an expert in order to respond to a police officer's testimony that an indentation on the grocery store wall was caused by a bullet fired by Mr. Lamar, who testified that he did not fire his gun. As the state court reasonably concluded, Mr. Lamar cannot succeed on this claim because he has offered no expert testimony to support it. *See Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989), *cert. denied*, 493 U.S. 898 (1989).

## IV.

Mr. Lamar also claims that his attorney should have presented the testimony of Russell Zitek, who would have testified that Mr. Gladson admitted shooting at a police officer after she shot at him. According to Mr. Lamar, this shot from Mr. Gladson (rather than a shot from Mr. Lamar) could have caused the indentation on the grocery store wall and Mr. Zitek's testimony would have supported

Mr. Lamar's version of the events. The state argues that this claim is procedurally defaulted because it was not raised in state court, *see Williams v. Kemna*, 311 F.3d 895, 897 (8th Cir. 2002), but Mr. Lamar asserts that it was. In any event, even if the claim was preserved, the state court rejected it, and we think that it was not an unreasonable application of clearly established federal law as determined by the Supreme Court to conclude that there was no reasonable probability that the jury would have reached a different verdict had it heard that Mr. Gladson said that he exchanged gunfire with another officer at the scene.

V.

We also believe that Mr. Lamar is not entitled to relief on his claim that his trial counsel was ineffective when he did not object to a juror sleeping through part of the state's case. Counsel testified that he withheld his objection because he did not mind if a juror missed part of the state's presentation. We believe that the state court did not unreasonably apply Supreme Court decisions by concluding that counsel's strategy was the "result of reasonable professional judgment" and did not prejudice Mr. Lamar. *See Strickland*, 466 U.S. at 690; *cf. Mitchell v. Kemna*, 109 F.3d 494, 496 (8th Cir. 1997), *cert. denied*, 522 U.S. 880 (1997).

VI.

Mr. Lamar, who is black, also claims that his counsel was ineffective because he did not object to a racial slur that the prosecutor allegedly made in closing argument. Closing arguments were not recorded, and the only evidence that Mr. Lamar offered in support of this claim is the testimony of his trial counsel, who was deposed during Mr. Lamar's state post-conviction proceedings. The attorney's recollection of the closing argument, which had taken place seven years earlier, was vague: Counsel testified that the prosecutor "made a racial slur regarding blacks, and I don't remember his comments." Later in the deposition, counsel explained that he did not object, in part, because he did not think that the prosecutor's remark "was very persuasive. I mean it was kind of like a 'Black Sambo' kind of comment." We are

unsure of exactly what counsel meant by his description of the remark, although we note that he used it in the context of downplaying the comment's effect on the jury.

We find any racial slur, assuming that it was uttered, inexcusably reprehensible, but Mr. Lamar has established neither what was said nor the context in which the undefined remark was made. Based on this uncertain and incomplete rendition of what occurred, we simply cannot say that it was an unreasonable application of clearly established federal law as determined by the Supreme Court for the state court not to conclude that counsel's failure to object violated Mr. Lamar's constitutional right to the effective assistance of counsel.

VII.

Mr. Lamar also contends that the state violated his due process right to a fair trial by asking him during cross-examination whether certain state witnesses, including police officers, were lying. Mr. Lamar relies on cases from other circuits that prohibit a prosecutor from eliciting testimony from one witness that another witness has lied, particularly where, as here, the witness is a law enforcement officer. *See, e.g., United States v. Fernandez*, 145 F.3d 59, 64 (1st Cir. 1998); *United States v. Richter*, 826 F.2d 206, 208 (2d Cir. 1987). We first note that the cases cited by Mr. Lamar are direct criminal appeals that do not rely on constitutional principles for their rulings, and that Mr. Lamar has not cited to nor have we found a Supreme Court case addressing this issue. We believe, moreover, that regardless of whether the challenged questions had been asked it was obvious to the jury that Mr. Lamar's testimony was contrary to that of several of the prosecution's witnesses. *Cf. United States v. Sullivan*, 85 F.3d 743, 750 (1st Cir. 1996). Although we do not necessarily condone the questions posed to Mr. Lamar, we conclude that the state court's rejection of the claim (which Mr. Lamar framed in that court as an ineffective-assistance claim) is not an unreasonable application of federal law as established by relevant Supreme Court decisions.

## VIII.

Finally, Mr. Lamar contends that his appellate counsel was ineffective for failing to raise on direct criminal appeal the claims that we have already addressed and rejected in this opinion. Assuming for the sake of argument that Mr. Lamar has not defaulted these claims, and that they could have even been raised in a direct appeal in Iowa, we conclude that the Iowa court would have rejected them (as it did in post-conviction proceedings) and thus Mr. Lamar has suffered no prejudice.

## IX.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.