**GOVERNMENT OF the VIRGIN ISLANDS, Appellee,**

v.

**Sheldon GRANT, Appellant.**

No. 84–3422.

United States Court of Appeals, Third Circuit.

Argued April 22, 1985.

Decided Oct. 17, 1985.

Linda D. Hopkins (argued), Asst. Atty. Gen., Christiansted, St. Croix, V.I., for appellee.

Lolita d'Jones (argued), Christiansted, St. Croix, V.I., for appellant.

Before ADAMS, GARTH and EDWARD R. BECKER, Circuit Judges.

## OPINION OF THE COURT

EDWARD R. BECKER, Circuit Judge.

This is an appeal from a judgment of the District Court of the Virgin Islands affirming a judgment of conviction by the Territorial Court of the Virgin Islands against appellant Sheldon Grant on charges of assault in the third degree, V.I.Code Ann. tit. 14, § 297(2) (1971), and possession of a dangerous weapon during a crime of violence, *id.* § 2251(a)(2)(B) (1974). The appeal presents two interesting questions concerning the law of character evidence, more specifically: (1) whether testimony that a defendant has never been arrested or charged with a crime is admissible as character evidence and entitles the defendant to a good character charge; and (2) whether evidence of a lack of prior arrests

is admissible on any other grounds.[1] The appeal also raises two significant points concerning the sentencing authority of Virgin Islands courts. For the reasons that follow, we will affirm the conviction.

## I.

On October 10, 1982, Sheldon Grant was employed as a cook at the Binnacle Bar and Restaurant located in the Caravelle Hotel in Christiansted, St. Croix. He reported to work sometime before 7:00 a.m. to prepare for the morning's breakfast. Grant was the first employee to arrive and, because there had been incidents involving missing bar goods, he waited for a waitress to appear so that the two of them could enter the restaurant together. When it became apparent that the waitress was going to be late, however, Grant used his key and entered the restaurant alone.

There is no dispute that at approximately 7:00 a.m., a confrontation took place between Grant and Franklin Parris, the prosecuting witness. Parris, the government's principal witness, claimed that he sought entry to the restaurant to have breakfast, but that Grant cursed at him and refused to let him in whereupon the argument grew more intense, with both parties exchanging obscenities. Parris testified that while he (Parris) remained outside, Grant went to the kitchen and obtained a butcher knife, exited the restaurant, and, after a struggle, stabbed him with the knife in the left leg.

Grant's version of the incident was very different. He testified that Parris arrived at the restaurant door and started to bang on it while cursing at Grant. Grant stated that, feeling threatened, he attempted to lock Parris out of the restaurant but that Parris, a much larger man, prevented him from doing so. According to Grant, there were no means of escape (the rear door was locked and Grant did not have a key), so he ran to the kitchen area, picked up a knife, and ran back to the door. Grant testified that Parris then forced his way into the restaurant, lunged at Grant, and that they "rumbled about," but that, as he was trying to escape the fracas, both he and Parris sustained injuries from the knife.

The case thus resolved essentially into a credibility dispute between the complainant and defendant. After a two-day trial, the case was submitted to the jury, which found Grant guilty on both counts.

## II.

The most difficult question on appeal arises out of an incident during trial when Grant, whose only character witness was unavailable,[2] attempted to testify that he had never been arrested or charged with a crime. Grant also asserted that such testimony would support a good character charge. The Territorial Court held that the proffered testimony was not proper character evidence and that, in any event, only a third party can testify to a defendant's good character (by evidence of opinion or reputation).[3] The Territorial Court therefore excluded the testimony and refused to charge the jury that evidence of good character is circumstantial evidence that could weigh in favor of an acquittal. The district court, reviewing the case on appeal pursuant to V.I.Code Ann. tit. 4, § 33 (1972), affirmed.

Grant's attempt to obtain a good character charge in the manner described raises the issues we have described above. We consider them seriatim.

## A.

■ Evidence of a person's character is generally not admissible to prove that he

---

1. We decide these questions under the Federal Rules of Evidence which are applicable in the Territorial Court of the Virgin Islands, *see* 5 V.I.C. app. IV, r. 7.

2. On the first day of the trial, Grant's proposed character witness was present. However, the judge had to recess court that day before the witness was called to testify. On the following morning, the witness was unable to appear.

3. Although Grant contends forcefully that the Territorial Court erred in refusing to permit him to prove his character through his own testimony, in view of our disposition of the case, we need not reach that question here.

acted in conformity therewith on a particular occasion. Fed.R.Evid. 404(a). One exception to this rule is that, in a criminal case, an accused may introduce evidence of his own good character in order to suggest the inference that someone with good character would not have committed the crime with which the accused is charged. Fed.R. Evid. 404(a)(1).

The methods by which character evidence may be introduced are prescribed by Fed.R.Evid. 405. Section (a) of this rule, applicable where character is used circumstantially to prove another fact (here, the ultimate fact of innocence), provides:

*Reputation or opinion.* In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.[4]

The first question before us is whether testimony that an accused has never been arrested is an acceptable method for proving character under Fed.R.Evid. 405(a) and, consequently, whether this kind of testimony entitles the defendant to a good character charge. As indicated in part I.A., Rule 405(a), which applies when character is being used as circumstantial evidence of some other fact, allows proof of character solely by means of reputation or opinion testimony and prohibits by implication, inquiry into specific instances of conduct. This is in contrast to Rule 405(b) which clearly permits it. *See supra,* n. 3. Professors Wright and Graham succinctly state the rationale for the approach in Rule 405(a):

> The common law rules [upon which Rule 405 is based] were justified in terms of fairness and efficiency. While specific instances of conduct were recognized as the most reliable proof of character, the costs of proving a sufficient number of instances in terms of court time, potential prejudice to a party, and possible confusion of the jury were thought to be too high where character was being used only as circumstantial evidence of conduct.

Wright & Graham § 5262 at 567.[5]

Some commentators argue that the prohibition against the introduction of specific instances of conduct should not apply to an accused's attempt to prove his good character, inasmuch as a major reason for the prohibition—the potential for unfair prejudice to the accused that would result from having to rebut evidence regarding multiple instances of bad conduct—is not implicated in this situation. *See* J.H. Wigmore, 1 *Evidence in Trials at Common Law* § 195 (3d ed. 1940); J. Weinstein & M. Berger, 2 *Weinstein's Evidence* ¶ 405[04] (1982) (hereinafter "Weinstein"); *see also State v. Braddy,* 254 Ga. 366, 330 S.E.2d 338, 340 (1985) (plurality of the court would make an exception to the rule that specific instances of conduct may not be introduced to prove character where such evidence is introduced through the defendant's own

---

**4.** Fed.R.Evid. 405(b) permits the introduction on direct examination of evidence regarding specific acts when character is an essential element of a claim, charge or defense. One illustration would be a defamation case where the plaintiff's claim is that the defendant's defamatory statements harmed his reputation for good character. In such cases, character is said to be "in issue." Rule 405(b) is not apposite here.

Rule 405(a) permits inquiry on cross-examination as to whether the reputation witness "has heard" of particular instances of conduct pertinent to the trait in question. Such an inquiry enables the cross-examiner to test the witness's credibility and his qualifications to bespeak the community opinion: if the witness has never heard the speculations and rumors in which even one's friends indulge upon arrest, the jury may doubt that the witness is capable of giving reliable testimony as to the defendant's reputation. The United States Supreme Court has conceded the mischief of this line of examination, *see Michelson v. United States,* 335 U.S. 469, 479, 69 S.Ct. 213, 220, 93 L.Ed. 168 (1948), and it has been the subject of much discussion. *See generally* S. Saltzburg and K. Redden, *Fed.R.Evid.Manual* (3d ed. 1982), 158, 161–64.

**5.** Wright and Graham contrast Rule 405(a) with note 405(b) by adding that "where character was an ultimate issue in the case, courts felt that the benefits outweighed the costs."

testimony). There is no disagreement among the commentators, however, that Rule 405(a) does not accommodate this policy by making an exception for accused persons seeking to prove their good character by specific acts. *See, e.g.,* Weinstein ¶ 405[04].

The literal language of Fed.R.Evid. 405(a) does not specifically address the situation in the present case, because the evidence proffered by Grant was of the *absence* of specific instances of conduct, i.e., evidence of bad conduct that would have resulted in his arrest. Professors Wright and Graham imply that testimony as to the absence of specific acts is akin to reputation evidence and argue that it should be admissible under Rule 405(a). They offer the example of an accused who calls the minister of his church to testify that the accused had been the church treasurer for twenty years, during which time the church never lost a penny. Professors Wright and Graham conclude that there is little reason to exclude testimony of this kind because it is probative of character, involves no prejudice, and takes little time to elicit. Wright and Graham § 5266, at 595–98.[6]

On the other hand, testimony as to the lack of prior bad acts is, in essence, testimony as to multiple instances of good conduct, and its admission would appear to violate a strict reading of Rule 405(a). In addition, this kind of testimony is generally less probative of good character than general reputation or opinion evidence, for one's good reputation presumably reflects not only the absence of specific bad acts, but also one's good acts and general public conduct. Indeed, testimony that one has never been arrested is especially weak character evidence; a clever criminal, after all, may never be caught. *Cf. Michelson v. United States,* 335 U.S. 469, 482, 69 S.Ct. 213, 221, 93 L.Ed. 168 (1948) ("Arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness.")

Moreover, inasmuch as the Federal Rules of Evidence provide a clear method of proving character, we see no reason to stretch them to make testimony as to absence of an arrest record sufficient to trigger a character charge. On the contrary, there is good reason to adhere to a more literal reading of the rule. Evidence sufficient to invoke a character evidence charge presumably would be sufficient to open the door to rebuttal evidence by the prosecutor. Thus, in addition to restricting defendant's use of conduct evidence, close adherence to the rules serves an important correlative purpose; it guarantees that a defendant can open the door to evidence of his bad character only if he takes specific and deliberate steps to prove his good character. A loosening of Rule 405(a) might result in unwary defendants opening themselves to a character attack by testimony not intended to have this result. *See* Wright & Graham § 5236, at 394–95 ("Only where the defendant offers evidence of reputation or direct opinion of his character should the prosecution be entitled to [offer rebuttal]. To hold otherwise would be to permit all sorts of inadvertent openings of the door to character proof...."). *Cf. United States v. Mills,* 704 F.2d 1553 (11th Cir.1983) (pro se defendant held to have placed his character in issue by the "plain language" of his questions during cross-examination, after which government was entitled to rebut with evidence of bad character).

█ We hold, therefore, that testimony as to an absence of prior arrests does not, standing alone, constitute evidence of good character admissible as such under Rule 405(a), and thus does not entitle the accused to a character evidence charge. Accordingly, the Territorial Court did not err in refusing appellant's request for such a charge. *Cf. Carson v. Polley,* 689 F.2d 562, 576 (5th Cir.1982) (evidence that it was "impossible that [defendant] could lose his temper" held insufficient to open door to bad character evidence).

**6.** Professors Wright and Graham would treat testimony regarding an honorable discharge from the military service in a similar matter. *See* Wright & Graham § 5266, at 598.

## B.

Our holding that testimony of absence of arrests is not admissible as evidence of good character does not end the matter, however, for the trial court not only refused to charge the jury on good character but also prohibited Grant from testifying on the matter. During the course of a trial, it is customary for the defendant to introduce evidence concerning his background, such as information about his education and employment. Such evidence is routinely admitted without objection, and testimony that an accused has never been arrested is commonly admitted as part of this background evidence.

The jurisprudence of "background evidence" is essentially undeveloped. "Background" or "preliminary" evidence is not mentioned in the evidence codes, nor has it received attention in the treatises. One justification for its admission, at least in terms of the background of a witness *qua* witness, is that it may establish absence of bias or· motive by showing the witness' relationship (or non-relationship) to the parties or to the case. It may also be said to bear on the credibility of the witness by showing the witness to be a stable person. The routine admission of evidence that an accused has never been arrested would thus seem to be a function of years of practice and of the common sense notion that it is helpful for the trier of fact to know something about a defendant's background when evaluating his culpability.

■ We do not gainsay that the practice of admitting evidence as to a lack of prior arrest, as background evidence (though not as evidence of good character that would require good character charge and open the door to evidence of bad character) makes some sense.[7] In determining whether to admit background evidence, however, wide discretion should remain with the trial court. We hold that the Territorial Court did not abuse its discre-

tion in refusing to permit Grant to testify that he had no prior arrests. We also note that in view of the relatively low probative value of such evidence, particularly when coming from the defendant, refusal to admit such evidence, even if error, would be harmless. See discussion supra at pp. 8–9.

## III.

■ Grant argues that the Territorial Court violated his right against being "twice put in jeopardy," U.S. Const. amend V., by sentencing him to two and one-half years in prison on the charge of possession of a dangerous weapon during a crime of violence in addition to placing him on probation for the assault conviction. He contends that the possession charge (contained in Count II) merged into the assault with a deadly weapon charge (in Count I), because the use of a "deadly weapon" is an essential statutory element of third degree assault, and that the court could thus not impose separate punishment for the two offenses.

Grant's argument is unpersuasive. The legislature made clear in the language of the deadly weapon statute that it intended the punishment imposed for that offense to be cumulative to the punishment imposed for the crime of violence itself. *See* V.I. Code Ann. tit. 14, § 2251(a)(2)(B) (Whoever has any "dangerous or deadly weapon … during the commission or attempted commission of a crime of violence … shall be fined … or imprisoned…., or both, *which penalty shall be in addition to the penalty provided for the commission of, or attempt to commit, the crime of violence,*" (emphasis added)). The Supreme Court has held that where a legislature specifically authorizes cumulative punishment for two offenses, even if one of the offenses is included in the other under the test of *Blockburger v. United States,* 284

---

**7.** We note that the line between background evidence and character evidence is blurred, and that at some point a defendant who goes too far with evidence indicating good character, despite attempts to characterize it as background evidence, might find that the door to rebuttal evidence has been opened.

U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932),[8] the prosecutor may seek, and the trial court or jury may impose, cumulative punishment under such statutes in a single trial without violating the Double Jeopardy Clause. *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983).

## IV.

 Finally, Grant argues that the district court improperly vacated that portion of the Territorial Court sentence which provided that the mandatory minimum two and one-half years could be served on weekends. The relevant statute, V.I.Code Ann. tit. 14, § 2254 (1983) states, in part:

> (a) A person convicted pursuant to section 2251 of this chapter of having ... a deadly ... weapon ... during the commission or attempted commission of a crime of violence, shall be incarcerated for a term of imprisonment of not less than one-half of the maximum sentence specified in that section.
>
> (b) ... [I]mposition of sentence shall not be suspended, deferred, or withheld, nor shall such person be eligible for probation, parole, or any other form of release prior to serving the mandatory minimum term....

We endorse the reasoning of the district court that the plain language of the statute forbids the sentence fashioned by the Territorial Court, and that the legislative history gives no contrary indication.

## V.

 This case, a close one, could have resulted in an acquittal given the testimony

at trial. The jury, however, believed the testimony of the victim, Franklin Parris, and rejected Grant's self-defense claim. Such a decision was well within its province. Finding that the verdict is supported by the evidence and that there was no legal error in the trial or in the sentence,[9] we will affirm the judgment of the district court.

---

8. Under *Blockburger,* a lesser included offense is one that does not require proof of any additional element beyond those required by the greater offense. The elements are compared in the abstract, without looking to the facts of the particular case. *See Gov't of the Virgin Islands v. Joseph,* No. 84–3527, slip op. at 5 (3d Cir. June 21, 1985).

9. Appellant has made a number of additional arguments: (1) that introduction of the knife involved in the alleged assault was unduly prejudicial; (2) that the government's lead witness, the victim, Franklin Parris, was an incompetent witness because of his reported history of mental illness; (3) that the government did not adduce sufficient evidence for the jury to find the appellant guilty beyond a reasonable doubt, essentially because the evidence of self-defense was "overwhelming"; (4) that the government was guilty of prosecutorial misconduct by the government's attorney and the police department; (5) that the trial court's jury instructions were in error; and (6) that the government attorney had waged a "personal vendetta" against the accused. These contentions are plainly without merit, and we reject them without further discussion.