**UNITED STATES of America, Appellee,**

v.

**Michael BLACKWELL,
Defendant–Appellant.**

**No. 817, Docket 87–1417.**

United States Court of Appeals,
Second Circuit.

Argued March 1, 1988.

Decided July 29, 1988.

Abraham L. Clott, New York City (The Legal Aid Society, Federal Defender Services Unit), for defendant-appellant.

Edward E. McNally, New York City, Asst. U.S. Atty. for the S.D. New York (Rudolph W. Giuliani, U.S. Atty. for the S.D. New York, Celia Goldwag Barenholtz, Asst. U.S. Atty., of counsel), for appellee.

Before OAKES and NEWMAN, Circuit Judges, and KEENAN, District Judge.[*]

KEENAN, District Judge:

Michael Blackwell appeals from a judgment of conviction in the United States District Court for the Southern District of New York on July 7, 1987 after a jury trial before the Honorable David N. Edelstein, United States District Judge. Appellant was convicted of four counts of theft of mail by an officer in violation of 18 U.S.C. § 1709. On Counts 1–3 he was sentenced to concurrent prison terms of two years; on count 4 he received a two-year suspended sentence and probation. Special assessments totalling $200 were imposed.

On appeal, Blackwell claims that the District Court erred in excluding his testimony that he had no prior arrests or convictions. Although we believe that the District Court should have permitted such testimony, we affirm because the proof of guilt here was overwhelming and any error was harmless.

## I. Background

Michael Blackwell was a truck driver for the United States Postal Service who drove the route from Stadium Station, located on 161st Street and Gerard Avenue in the Bronx, near Yankee Stadium, to Highbridge Station, eight blocks north of Stadium Station. On December 8, 1986, appellant made the noon pickup at about 12:20

---

[*] Honorable John F. Keenan, United States District Judge for the Southern District of New York, sitting by designation.

p.m. Earlier that day, four pieces of certified mail had been mailed at Stadium Station. They were:

(1) a letter from Frances Gonzales containing a gold bracelet and a $10 bill;

(2) a letter from Carmen Lopez to her landlord;

(3) a Christmas card from Donald Fields containing $350 (three $100 bills and one $50 bill); and

(4) a letter from Sor Montenegro containing an airline ticket and a money order.

Appellant arrived at Highbridge Station thirty-five minutes later, although the trip should usually take only about ten minutes. At Highbridge, appellant unloaded and picked up mail, all in front of the station manager, who had also placed some "test letters" in the packages picked up by appellant.

From Highbridge Station, Blackwell's daily assignment called for him to return his mail truck directly to the Bronx General Post Office by a certain route. After leaving Highbridge, he was followed by postal inspectors who saw Blackwell deviate from the required route to the General Post Office to visit a video store. Blackwell deviated a second time to a small park where the inspectors saw Blackwell dump the contents of a white tray into a trashcan.

A postal inspector recovered six letters from the trashcan, four of which were the four certified letters mailed earlier that day. The $10 bill and note were missing from the Gonzales envelope and the three $100 bills and $50 bill were missing from the Fields envelope.

The inspectors went to Blackwell's house one hour later and asked him to go to the Postal Inspection Service office where he was advised of his *Miranda* rights. Blackwell initially said he drove directly to the General Post Office, but later admitted that he had gone to the video store and had dumped the white tray in the park.

When Blackwell emptied his pockets, he had $418.25 in cash including three $100 bills, one $50 bill and five $10 bills. He also had a silver dollar on which Postal Inspector Scott had carved his initials and which had been placed in a "test letter" one month earlier. Appellant claimed that it was his "lucky coin."

Blackwell took the witness stand and testified that he was 32 years old, born and raised in New York, had completed two years of college, served in the United States Marine Corps and had earned approximately $21,000 per year as a truck driver for the Postal Service. Appellant denied taking the letters in question and said he initially lied about deviating from his route because he feared some sort of "penalty." Blackwell said that he was only dumping garbage left by other drivers in the white tray and that he had taken $400 that morning from his home that he had saved for his son's airfare. He also said that he had had the silver dollar for three to four months, but did not remember where he got it.

The exchange and ruling which took place during appellant's direct examination and which are the subject of this appeal follow:

Q (Defense Counsel) Have you ever been arrested or convicted of a crime?

A No, sir.

(Prosecutor) Your Honor, we'd object and move to strike the last question and answer.

THE COURT: Strike it.

(Defense Counsel) Which question?

THE COURT: I said strike it.

Blackwell claims on appeal that Judge Edelstein erred by striking the answer and that this error merits reversal. Although we believe that the answer should have been allowed to stand, we affirm.

## II. Discussion

The Government argues that Rules 405 and 608(a) of the Federal Rules of Evidence preclude the admissibility of testimony by an accused of lack of a criminal record. Relying primarily on *Government of the Virgin Islands v. Grant*, 775 F.2d 508 (3d Cir.1985), the Government contends that the trial judge properly prevented the accused from proving good character in an impermissible way. We disagree on the grounds that such evidence should have

been received for a reason other than to prove good character.

Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The Advisory Committee's notes on Rule 401 are illuminating. These notes state that "[e]vidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding." *See McCormick on Evidence* § 184, at 541 ("considerable leeway is allowed even on direct examination for proof of facts that do not bear purely on the legal issues, but merely fill in the background of the narrative....").

The court in *Grant* made the following observation, concerning evidence that the accused was never arrested as background evidence:

> During the course of a trial, it is customary for the defendant to introduce evidence concerning his background, such as information about his education and employment. Such evidence is routinely admitted without objection, and testimony that an accused has never been arrested is commonly admitted as part of this background evidence.

*Grant* 775 F.2d at 513. The *Grant* court went on to write:

> The routine admission of evidence that an accused has never been arrested would thus seem to be a function of years of practice and of the common sense notion that it is helpful for the trier of fact to know something about a defendant's background when evaluating his culpability.

*Id.*

Certainly, the trial court is entitled to wide discretion concerning the admissibility of background evidence. Although it may be true that evidence of a lack of prior convictions or arrests may be of relatively low probative value, it is nevertheless something that the trier of the fact has a right to know in gauging the credibility of a witness. The opportunity to inform the trier of the fact of the accused's lack of a criminal record is clearly one of the factors which would motivate a defendant to testify.

In this case, the Government argues that one of the reasons the evidence of lack of prior convictions or arrests was properly excluded is that had it been allowed to stand, the Government could have introduced rebuttal character evidence to show that Blackwell was fired from a position as a correction officer after he allegedly engaged in sexual conduct with a female inmate. Even if such evidence were admissible as rebuttal character evidence, however, it would not be admissible as background evidence. Hence, this is not a reason to exclude the evidence of a lack of a prior criminal record.

The testimony concerning Blackwell's service in the Marine Corps and his completion of two years of college was properly received as background. It told the jury something about the defendant as a person, and his experience in life. Similarly, the testimony that he had never been arrested or convicted of a crime would have been of some value to the jury in assessing Blackwell's credibility, which was important to them since Blackwell's defense primarily consisted of an exculpatory story.

Although it was error to strike the evidence of a prior clean record, the error was plainly harmless in this case. The evidence against appellant was overwhelming. The Postal Inspectors saw him deviate from his prescribed route in order to dispose of the four stolen and torn-open certified letters and appellant was found to possess currency in denominations matching the stolen bills, as well as the marked coin which had earlier disappeared from a test letter along his route.

The judgment of conviction is affirmed.