**UNITED STATES of America**

v.

**Steven A. LUNDY Timothy R. Robinson**

**Nos. CRIM.A. 05–CR–327–01, CRIM.A. 05–CR–327–02.**

United States District Court, E.D. Pennsylvania.

Dec. 2, 2005.

---

326

Richard J. Zack, U.S. Attorney's Office, Philadelphia, PA, for United States of America.

## *MEMORANDUM & ORDER*

SURRICK, District Judge.

Presently before the Court are the Government's Motion In Limine To Allow Cross–Examination Of The Defendants With Their Prior False Statements (Doc. No. 20), the Government's Motion In Limine To Allow Cross–Examination Of The Defendants' Character Witnesses With Specific Instances Of Conduct (Doc. No. 29), Defendants' Responses thereto (Doc. Nos. 30 and 31), and the Government's Reply To Defendants' Response (Doc. No. 32). For the following reasons, the Government's Motions will be granted in part and denied in part.

## I. BACKGROUND

Defendants Steven Lundy and Timothy Robinson were indicted on June 9, 2005 on charges of conspiracy in violation of 18 U.S.C. § 371 (Count 1); making false statements in violation of 18 U.S.C. § 1001 (Counts 2 and 3); and entering, in violation of security regulations, an airport area that serves an air carrier in violation of 49 U.S.C. § 46314 (Counts 4 and 5). (Indictment, Doc. No. 8.)

These charges arose out of events that occurred on May 19, 2005. On that date, Lundy and Robinson arrived at the Philadelphia Airport intending to board American Airlines flight 443 to Miami, Florida. (Doc. No. 20 at 1.) Defendants were involved in private investigative work and arrived at the airport with loaded handguns for which they had valid permits. (Doc. No. 31 at 1.) Prior to their arrival at the airport, Defendants had obtained information regarding procedures for carrying loaded firearms on an airplane. (*Id.*) Defendants contend that they misunderstood federal regulations and believed that they, as private citizens, could lawfully carry their handguns on the plane. (*Id.* at 2.) The Government alleges that Lundy and

Robinson told airport security personnel and American Airlines personnel that they were "police officers" and that they sought to carry loaded weapons onto their flight pursuant to security procedures. (Doc. No. 20 at 3–6.)

It is uncontested that Defendants each completed an American Airlines form used by law enforcement officers who intend to travel on an airplane with a loaded weapon, and that each Defendant checked the box on this form that indicated that they were "full time municipal, county, or state law enforcement officer[s]." (Id. at 4–5.) Defendants assert that the forms were chosen and provided to Defendants by airline personnel and that they completed these forms hastily and "made some mistakes." (Doc. No. 31 at 2.) After signing the log for officers carrying firearms and presenting their badges and the American Airlines forms they had completed, Lundy and Robinson passed through security. (Doc. No. 20 at 6–7.) They were arrested a short time later by Philadelphia police officers who confiscated a loaded firearm from each defendant. (Id. at 7.)

The Government filed the instant Motions because Defendants have indicated that they intend to testify on their own behalf at trial and intend to present character witnesses who will testify with regard to their good reputations. The Government requests permission to cross-examine Defendants in an attempt to challenge their credibility based on prior false statements that they have made. In addition, the Government requests permission to cross-examine Defendants' character witnesses concerning specific instances, where Defendants have been arrested or convicted, for the purpose of testing the reliability of the opinions of these witnesses and their knowledge of Defendants' reputations.

## II. LEGAL STANDARD

■■■ In assessing the Government's Motion in Limine to allow cross-examination of Defendants with their prior false statements, we must consider Federal Rules of Evidence 608(b) and 403.[1] Under Rule 608(b), a district court has the discretion to admit evidence of specific instances of conduct to impeach a witness's credibility if that conduct is probative of truthfulness or untruthfulness. United States v. Butch, 48 F.Supp.2d 453, 462 (D.N.J.1999) (citing United States v. Dowling, 855 F.2d 114, 120 (3d Cir.1988)). The text of Rule 608(b) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness ... concerning the witness' character for truthfulness or untruthfulness.

Fed.R.Evid. 608(b). "The character of the previous conduct, the importance of the testimony, and the probable effect on the jury if the misconduct is divulged are all factors a judge must consider in deciding whether to allow inquiry about past conduct." Butch, 48 F.Supp.2d at 462 (internal quotations omitted); see also 4 Weinstein's Federal Evidence § 608.12. In addition to these factors, the trial court must also consider the age of the miscon-

---

1. The Third Circuit, in United States v. Davis, 183 F.3d 231 (3d Cir.1999), made it clear that courts should consider the permissibility of cross-examination about prior bad acts to challenge credibility under Rule 608 and not Rule 404(b) as some other courts have suggested. Id. at 257 n. 11.

duct and its remoteness in time to the instant charges. *Id.* "Remoteness may reduce the probative value of certain evidence, but it does not preclude its admission under Rule 608(b)." *Id.* (citing *United States v. Jackson,* 882 F.2d 1444, 1448 (9th Cir.1989)).

■ The Court's inquiry under Rule 608(b) is guided by the analysis required by Rule 403. *United States v. Bocra,* 623 F.2d 281, 288 (3d Cir.1980) ("Rule 608(b) is meant to tie into Rule 403."). Rule 403 provides in relevant part: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R.Evid. 403. It is within the discretion of the trial court to decide if the questions on cross-examination relating to the prior conduct of the witness are probative of truthfulness or untruthfulness and whether the probative value is outweighed by the prejudicial effect.

■ In assessing the Government's Motion in Limine to allow cross-examination of Defendants' character witnesses on their knowledge of Defendants' prior arrests or convictions, we must consider Federal Rule of Evidence 405(a), which provides:

> In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

Fed.R.Evid. 405(a). The Rule thus permits cross-examination as to whether the character witness has heard of particular instances of conduct relevant to the trait in question, an inquiry which enables the fact finder to better assess the witness's credibility and ability to testify to the general community opinion. *Gov't of Virgin Is-*

*lands v. Grant,* 775 F.2d 508, 511 n. 4 (3d Cir.1985). "If the witness has never heard the speculations and rumors in which even one's friends indulge upon arrest, the jury may doubt that the witness is capable of giving reliable testimony as to the defendant's reputation." *Id.*

■ The Supreme Court has cautioned that trial courts, while having wide discretion to permit such reputation testimony and cross-examination, must be careful "to protect the practice from any misuse." *Michelson v. United States,* 335 U.S. 469, 480, 69 S.Ct. 213, 93 L.Ed. 168 (1948). Before permitting cross-examination of a character witness on specific instances of a defendant's conduct, the trial court must ascertain that the Government has a good-faith basis for the line of questioning and that the conduct at issue "would probably result in some comment among acquaintances if not injury to defendant's reputation." *Id.* at 481, 69 S.Ct. 213.

■ Finally, the trial court must also insure that Rule 405(a) cross-examination on specific instances of conduct deals only with conduct that is relevant to the testimony the witness offered on direct examination. *United States v. Curtis,* 644 F.2d 263, 269 (3d Cir.1981). "[A]n opinion witness can be cross examined only on matters bearing on his own opinion, while a reputation witness can only be examined on matters reasonably proximate to the time of the alleged offense and likely to have been known to the relevant community at that time." *Id.*

## III. LEGAL ANALYSIS

### A. Credibility of Defendants

Defendants will proffer at trial that they mistakenly believed that they were authorized to carry loaded firearms on a commercial airplane and that they did not hide the fact that they were private investigators

and not law enforcement officers. The Government disputes this assertion and counters that Defendants lied to airline personnel and airport security personnel and claimed to be police officers who were authorized to carry loaded firearms on the airplane. The Government contends that Lundy and Robinson's defense "rests entirely on the defendants' credibility" and, as a result, "prior acts of dishonesty are highly probative." (Doc. No. 20 at 11.) Defendants, on the other hand, contend that "the case presents no great credibility dispute" because the only disputed issue is the Defendants' state of mind and intent. (Doc. No. 31 at 3.)

In *United States v. Beros,* 833 F.2d 455 (3d Cir.1987), the Third Circuit observed that when a defendant takes the witness stand, "he subject[s] his credibility to scrutiny, as do all witnesses." *Id.* at 464–65. Regardless of the issues in the case, the mere fact that a defendant testifies opens the door to cross-examination as to his credibility. The Government here seeks to raise certain instances of prior conduct only if Defendants choose to testify.

In addition, Defendants claim that they acted in good-faith when they arrived at the airport and sought to board flight 443 with loaded firearms. A defense of good-faith naturally rests on the defendant's credibility, thus making that an issue at trial. *See United States v. Olgin,* 745 F.2d 263, 275 (3d Cir.1984); *see also United States v. Middleton,* 246 F.3d 825, 837 (6th Cir.2001) (defendant's reliance on good-faith defense "opened the door to scrutiny of ... his credibility"). Since it is apparent that the credibility of the Defendants will be a significant factor in this trial we must assess the Government's attempts to attack that credibility.

## B. Cross–Examination of Defendants on 2002 Arrests

The Government seeks to cross-examine Lundy and Robinson on conduct underlying their prior arrest from 2002. On October 8, 2002, both Lundy and Robinson were arrested and charged with falsely claiming to be police officers in connection with 'an attempt to repossess appliances. (*Id.* at 10.) The charges against Robinson were dismissed for lack of evidence and, after a bench trial, Lundy was acquitted of all charges in connection with that incident. (Doc. No. 31 at 6.)

The Government, pointing to the underlying conduct in the 2002 arrests, argues that it should be permitted to cross-examine Defendants concerning that conduct because it deals explicitly with dishonesty. In fact, both Defendants were arrested for, among other charges, falsely claiming to be police officers, which is remarkably similar to the charges here. Defendants argue that because they were acquitted of these charges, the prejudicial effect of permitting cross-examination on this subject would clearly outweigh the probative value.

There is a dearth of authority on the issue of permitting cross examination regarding conduct that gave rise to charges for which the witness was later acquitted. However, the Second Circuit has addressed this issue in the case of *United States v. Schwab,* 886 F.2d 509 (2d Cir. 1989). *Schwab* recognized that determinations of this kind must be left to the discretion of the trial court. Nevertheless, it cautioned that: "Whether or not an acquittal technically estops the prosecution from eliciting the fact of prior misconduct, it will normally alter the balance between probative force and prejudice, which is already a close matter in many cases where prior misconduct of a defendant is offered." *Id.* at 513. *Schwab* suggested that while such

an inquiry may be technically permitted, it will often result in unfair prejudice to the defendant, leading the court to preclude the line of questioning under Rule 403. Moreover, the Second Circuit noted that a defendant, when asked about conduct for which he was arrested and acquitted, will often deny the misconduct. As a result, the only purpose of the question "is to place before the jury the allegation of misconduct," an allegation which can have no evidentiary weight. *Id.* "To permit the inquiry risks unfair prejudice, which is not justified by the theoretical possibility that the witness, though acquitted, will admit to the misconduct. When the witness is the defendant, the significance of the prejudice is magnified." *Id; see also Michelson,* 335 U.S. at 482, 69 S.Ct. 213 (1948) ("Arrest without more does not ... impeach the integrity or impair the credibility of a witness.... Only a conviction, therefore, may be inquired about to undermine the trustworthiness of a witness.").

In this case, the 2002 arrests resulted in acquittal or dismissal of all charges.[2] Moreover, the Government has offered no evidence to suggest that Defendants were, in fact, guilty. *Schwab,* 886 F.2d at 513. Under the circumstances, we conclude that the prejudicial effect of cross-examination of Defendants concerning the conduct which led to their 2002 arrests or any of the consequences to their careers or otherwise that resulted from those arrests would far outweigh its probative value.

Accordingly, we will preclude this line of questioning as to the Defendants.

## C. Cross–Examination of Lundy on 1994 Perjury Charge

On June 13, 1994, Lundy was arrested and charged with testifying falsely under oath in a court proceeding in Union County, New Jersey. Lundy claimed, under oath, that he worked for a private detective agency when, in fact, he was employed as a prison guard. The perjury charges were eventually dismissed subject to Lundy's enrollment in a pre-trial intervention program ("PTI program").[3] (Doc. No. 20 at 9.)

The perjury charges against Lundy were eventually dismissed as a result of his participation in the Pre–Trial Intervention program. However, such a dismissal is unique and may not be equated with acquittal. *See Gilles v. Davis,* 427 F.3d 197, 210–11 (3d Cir.2005) (dismissal of charges under Pennsylvania's pre-trial intervention program (ARD) cannot be equated with acquittal for purposes of § 1983 malicious prosecution claim). While expungement of the records related to a charge for which the defendant has undergone a PTI program is meant to "erase 'the stigma that would otherwise be borne by the defendant,' in the same way laws treat juvenile delinquents who have committed criminal acts, [it] does not constitute a finding of 'not guilty.'" *Id.* at 211

---

**2.** In *Schwab,* the Second Circuit dealt with a number of different arrests. In some the defendant had been acquitted, while the charges had been dismissed in others. *Schwab* treated acquittals and dismissals in the same way for purposes of Rule 608(b) cross-examination. *See Schwab,* 886 F.2d at 511, 513.

**3.** While the record does not specifically so state, we presume that the pretrial program that Lundy entered was New Jersey's Pre–Trial Intervention program, which is an alternative to criminal prosecution wherein the defendant, upon recommendation of the prosecutor and the PTI director, participates in a rehabilitation program. If the defendant successfully completes the program, that indictment may be dismissed. *See* N.J. Stat. Ann. §§ 2C:43–12, 2c:43–13; *see also Davis v. Grusemeyer,* 996 F.2d 617, 630 n. 28 (3d Cir. 1993) *abrogated on other grounds by Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644 (3d Cir.1998).

(quoting *Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir.1980)). Because the 1994 perjury charge was dismissed based upon participation in a PTI program, we will not treat such dismissal as an acquittal for purposes of assessing its admissibility under Rule 608(b). Instead, we conclude that the probative value of the 1994 perjury charge is not outweighed by its prejudicial effect. This charge goes directly to Lundy's credibility and involves an instance where the Defendant lied, which is "the classic example of a permissible inquiry." *United States v. Bocra*, 623 F.2d 281, 288 (3d Cir.1980); *see also United States v. Bustamante*, 45 F.3d 933, 946 (5th Cir.1995) (permitting cross-examination on defendant's solicitation of a bribe and failure to report income); *Davis*, 183 F.3d at 257 (permitting inquiry into incidents in which defendant police officer misappropriated department gasoline, used a false name, and lied to Internal Affairs). The perjury charge occurred in 1994, only eleven years before the instant charges and involved Defendant Lundy making false statements about his employment. This is an instance of prior conduct that is directly relevant to his credibility. We will permit this line of questioning on cross examination of Lundy.

While we permit questions that relate to this 1994 perjury charge, the Government may not introduce either reports or evidence of the consequences of these false statements, including for example, the Hudson County Division of Corrections documents on Lundy's suspension and termination. *See Davis*, 183 F.3d at 257 n. 12. "Such evidence would not only be

hearsay to the extent it contains assertion of fact, it would be inadmissible extrinsic evidence under Rule 608(b)." *Id.* Accordingly, to challenge Lundy's credibility, the Government may only question him on statements he made while under oath in 1994. *See id.* (allowing such extrinsic evidence would "set the stage for a mini-trial regarding a tangential issue of dubious probative value that is laden with potential undue prejudice").

**D. Cross–Examination of Lundy on False Statements During Traffic Stop and False Claims of Illness to Employer**

The Government seeks to cross-examine Lundy on false statements made when stopped by a police officer for a traffic violation and on false claims of illness that he made to his superiors while working as a correctional officer. Defendant argues that the Government has produced no documentary evidence to support a good-faith basis for either line of questioning. Defendant further contends that with respect to the traffic stop, Lundy was never charged with an offense involving lying and a traffic offense alone does not reflect on Lundy's character for truthfulness. Similarly, with respect to the false claims of illness, Defendant argues that cross-examination on this topic is more prejudicial than probative. In response to these arguments, the Government, in an attachment to its Reply Brief, has submitted documentary evidence which, it argues, supports its good-faith basis for questioning Lundy on both of these incidents.[4] (Doc. No. 32 at Exs. 1, 2.)

---

4. The Government has provided the Court with employee records from the Hudson County Division of Corrections that indicate excessive absence for illness. (Doc. No. 32 at Ex. 1.) In addition, the Government has provided the Court with an internal memorandum from the Hudson County Correctional Center indicating that a state police officer who had stopped Lundy for a traffic violation had "implied that Officer S. Lundy had indicated that he had possession of his badge and I.D. however could not produce it at that time." (*Id.* at Ex. 2.)

We will not permit inquiry into either of these events. While the Government has provided the court with documents in support of its intention to cross-examine Lundy on these topics, the evidence provided does not constitute "factual support for its inquiries" and does not establish "a good-faith basis for its questions." *Bustamante*, 45 F.3d at 946. The employee records from the Hudson County Correctional Center, provided by the Government to support its claim that Lundy lied to his superiors about sick leave, indicate only that Lundy was reprimanded for excessive use of sick leave. They do not indicate why he was absent from work and do not provide any indication that he was lying about his reasons. We will not permit a line of questioning that has such potential for prejudice based on such inconclusive evidence.

In addition, the memorandum from the Hudson County Correctional Center, submitted by the Government to support a line of questioning regarding Lundy's traffic stop, is similarly inconclusive. The memorandum states only that a state police officer who had stopped Lundy for a traffic violation had "implied that Officer S. Lundy had indicated that he had possession of his badge and I.D. however could not produce it at that time." (Doc. No. 32 at Ex. 2.) This is far from a "good-faith basis" for questioning Lundy on whether or not he lied to a state police officer. Because the Government has failed to provide a good-faith basis for questioning Lundy on either of these incidents, we conclude that the probative value of these questions is outweighed by their prejudicial effect. *Cf. Davis*, 183 F.3d at 257 (permitting inquiry into incidents in which defendant police officer misappropriated department gasoline, used a false name, and lied to Internal Affairs).

**E. Cross–Examination on Defendants' Failure To File and Pay Federal Taxes**

■ The Government argues that it should be permitted to cross-examine Defendants on the failure of their company, TCWL, Inc., t/a Hollywood Investigations, to file federal income tax returns since at least 2002 and the company's failure to pay federal withholding tax in violation of 26 U.S.C. §§ 7203 and 7202, respectively. Defendants counter that the Government has offered no evidence to demonstrate that this failure to file and pay federal taxes was willful as opposed to being the product of neglect or that there was profit requiring payment of taxes.

The Third Circuit has at least twice upheld a district court's allowance of cross-examination on a witness's failure to report or pay taxes, finding such conduct to be probative of truthfulness. In *Busta-mante*, the court held that "the failure to report income ... [is] relevant to the issue of honesty." *Bustamante*, 45 F.3d at 946. Similarly, in *United States v. Sullivan*, 803 F.2d 87 (3d Cir.1986), the Third Circuit affirmed the district court's decision to permit cross-examination on the defendant's fraudulent replies on federal tax forms, finding them probative of his credibility. *Id.* at 90–91; *see also United States v. Zandi*, 769 F.2d 229, 236 (4th Cir.1985) (false statement on tax returns considered probative of truthfulness and constitutes permissible subject of cross-examination). The case law makes no distinction between willful failure to file and mere neglect. Failure to file or pay taxes is relevant to the credibility of the witness regardless of the government's ability to demonstrate the witness's willful intent. However, the Government has, thus far, failed to provide the Court with evidence of a good-faith basis for questions concern-

ing the Defendants' failure to file and pay taxes. Therefore, we will not permit cross-examination on Defendants' failure to file or pay taxes unless or until the Government offers documentation of a good-faith basis for this line of inquiry.

### F. Cross–Examination on Lundy's False Statements to Federal Agents on May 19, 2005

■ The Government seeks permission to cross-examine Defendant Lundy on his statement to federal agents on May 19, 2005 that he had been terminated from his job as a Hudson County corrections officer because he had been caught "moonlighting" when, in fact, he had been fired because of his 1994 perjury charge. Defendant contends that this line of questioning should be prohibited because " '[m]oonlighting' does not bear on truthfulness." (Doc. No. 31 at 5.)

Defendant's assertion that the activity of moonlighting does not bear on truthfulness misses the point. The Government intends to cross-examine Defendant Lundy on the fact that he lied to a federal agent and not on the activity about which he lied. While we agree with the Government that lying to a federal agent about anything is probative of Defendant's truthfulness, we nevertheless conclude that this line of questioning should not be permitted. The Government has failed to provide the Court with any evidence of a good-faith basis for cross-examination on this subject. The Government has provided the Court with a document that appears to be a notice suspending Lundy from his employment as a corrections officer, but has offered no evidence that he was terminated because of the perjury charges and no evidence of his statements to federal agents on May 19, 2005.

### G. Cross–Examination of Character Witnesses on Their Knowledge of Defendants' Arrests and Convictions

The Government seeks to cross-examine Defendants' character witnesses on their knowledge of Lundy's and Robinson's past arrests and convictions. Specifically, the Government seeks to cross-examine witnesses on the following incidents: (1) the 2002 arrest for impersonating a police officer—Lundy was acquitted and charges against Robinson were dismissed; (2) the 1994 perjury charge against Lundy that was dismissed; (3) Lundy's 1997 conviction for possession of illegal ammunition; and (4) Lundy's 1984 conviction for illegal possession of weapons (mace). (Doc. No. 29 at 2–3.) Defendants argue that the arrests that resulted in acquittal or dismissal should not be the topic of cross-examination because of their prejudicial effect. In addition, Defendants contend· that questions with regard to arrests and convictions that occurred prior to 1997 when the character witnesses first met the Defendants should be precluded because the character witnesses will only testify to Defendants' reputations in the time period after 1997. (Doc. No. 31.)

■ Courts have consistently held that character evidence is relevant "in determining probabilities of guilt" and so permit, under Rules 404(a)(1) and 405(a), opinion or reputation testimony by character· witnesses. However, "[w]here the defendant chooses this perilous path ... he opens the door for the prosecution to ... challenge the defendant's character witnesses by cross-examining them about their knowledge of relevant specific instances of the defendant's conduct." *United States v. Monteleone*, 77 F.3d 1086, 1089 (8th Cir.1996). The rationale for such cross-examination is that if the character witness knew about the prior bad

conduct, his good opinion might rightfully be questioned and if he did not know about the conduct, the jury might question the reliability of his opinion and his assessment of the defendant's reputation. *See id.*

### 1. *Lundy's 1984 Conviction*

■ While there is no explicit time constraint in Rule 405(a) which would limit cross-examination on conduct that occurred in the too distant past, under Rule 403, courts may find questions with regard to remote conduct to be overly prejudicial. Lundy's conviction from 1984 is more than twenty years old. We are satisfied that the character witness should not be asked about Lundy's reputation based upon events that occurred more than twenty years ago and based upon events that occurred well before he even met the Defendant. *Cf. United States v. Wellons*, 32 F.3d 117, 120 (4th Cir.1994) (testimony on fifteen-year-old conviction permitted because character witness based his testimony on having known defendant for twenty years); *United States v. Watson*, 587 F.2d 365, 369 (7th Cir.1978) (approving of cross-examination of the character witness about defendant's arrests during period that witness had been acquainted with defendant). We will preclude the Government from pursuing this line of questioning.

### 2. *Lundy's 1994 Perjury Charge*

■ Defendants argue that as with the 1984 conviction, the Government should be precluded from cross-examination of char-

acter witnesses on Lundy's 1994 perjury charge because it occurred three years before Defendant's character witness met Defendant Lundy. We disagree. While the perjury charge and Defendant's enrollment in the PTI program occurred in 1994 and Lundy met the character witness in 1997, only three years passed between these two events. It is reasonable to assume that Lundy's community would know about the perjury charge and his enrollment in the PTI program and would not forget such information within such a short period of time. The character witness's knowledge regarding this perjury charge is certainly relevant to his testimony concerning Lundy's reputation in the community. Accordingly, we will permit cross-examination of Lundy's character witnesses on his 1994 perjury charge.[5]

### 3. *Lundy and Robinson's 2002 Arrests*

■ In this instance, the charges against Robinson were dismissed and Lundy was acquitted after a bench trial and appeal. Nevertheless, knowledge of this event is relevant to the character witness's testimony. If the character witness provides an opinion with regard to Defendants' reputations in the larger community, knowledge of such a recent event certainly bears on the credibility of this testimony. *Michelson*, 335 U.S. at 483, 69 S.Ct. 213 ("[I]nquiry as to an arrest is permissible because the prosecution has a right to test the qualifications of the witness to bespeak the community opinion."). In addition, the fact that nei-

---

**5.** As a general matter, where we permit a line of questioning on cross-examination of character witnesses, we will only permit such questions if they are relevant to the character trait about which the witness testified. For example, if the character witness testifies to the Defendant's reputation as a law-abiding citizen, questions that pertain to prior arrests or convictions may be permitted. Similarly, if the character witness testifies only to the Defendant's truthfulness, only questions pertaining to this character trait will be permitted on cross-examination. Because of the potentially prejudicial nature of these inquiries, we will provide the jury with a specific instruction on the limited purpose of this cross-examination.

ther arrest led to a conviction does not lessen the probative value of the line of inquiry. As the Supreme Court has explicitly stated, "A character witness may be cross-examined as to an arrest whether or not it culminated in a conviction, according to the overwhelming weight of authority." *Id.* at 482, 69 S.Ct. 213;*see also United States v. Grady,* 665 F.2d 831, 835 (8th Cir.1981). This line of questioning will be permitted.

### 4. *Lundy's 1997 Conviction*

■ Like the 2002 arrest, Lundy's 1997 conviction falls within the time period about which the character witness will testify. If an arrest is relevant to a defendant's reputation, certainly a conviction is also. If Defendant Lundy offers character testimony, the Government will be permitted to cross-examine the character witnesses concerning Lundy's 1997 conviction.

## IV. CONCLUSION

For these reasons, the Government's Motions will be granted in part and denied in part.

An appropriate Order follows.

### *ORDER*

AND NOW, this 2nd day of December 2005, upon consideration of the Government's Motion In Limine To Allow Cross–Examination Of The Defendants With Their Prior False Statements (Doc. No. 20), the Government's Motion In Limine To Allow Cross–Examination Of The Defendants' Character Witnesses With Specific Instances Of Conduct (Doc. No. 29), Defendants' Responses thereto (Doc. Nos. 30 and 31), and the Government's Reply To Defendants' Response (Doc. No. 32), it is ORDERED that the said Motions are

GRANTED in part and DENIED in part, consistent with the attached Memorandum.

IT IS SO ORDERED.