# IN THE COURT OF APPEALS OF IOWA

No. 16-1673
Filed August 16, 2017

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**UNDRAY JERMAINE REED,**
     Defendant-Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Kellyann M. Lekar, Judge.

A defendant challenges his conviction for possession of methamphetamine. **REVERSED AND REMANDED.**

Colin R. McCormack of Van Cleaf & McCormack Law Firm, LLP, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Darrel L. Mullins, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

Undray Reed appeals his conviction for possession of methamphetamine, claiming the prosecutor improperly vouched for the candor of a law enforcement officer during closing arguments. By telling jurors the officer was "being honest" and wouldn't risk perjury or his career by lying, the prosecutor engaged in misconduct and defense counsel's objection should have been sustained. Because Reed's drug conviction hinged on the officer's truthfulness, we find the misconduct to be prejudicial. Accordingly, we reverse and remand for a new trial.[1]

## I.  Facts and Prior Proceedings

Waterloo police officer Albert Bovy recalled the weather was clear but "fairly chilly" during his early morning shift on March 10, 2015. His dash camera showed a "good frost" on the ground at the Kwik Star parking lot where he was patrolling. Outside the Kwik Star, Officer Bovy noticed a Buick Century being driven without license plates. The officer turned on his lights and sirens to signal a traffic stop, but the driver—later identified as Reed—failed to pull over. In fact, Reed sped away, reaching speeds of forty-five to fifty miles per hour on residential streets. Reed eventually skidded through an intersection and crashed the Buick into a house.

Officer Bovy testified: "I could see his driver's window was open. His arm comes flinging up as if to throw something, and then he comes rolling out of the car and takes off running down the sidewalk." The officer chased Reed down the

---

[1] Because we reverse on this issue, we need not reach Reed's allegation that his trial attorney was ineffective for not seeking a mistrial based on the State's failure to establish a chain of custody for a methamphetamine pipe.

sidewalk—losing sight of him in an alley for about one minute but soon spotting Reed trying to squeeze under a parked car. The dash cam video recorded the loud barking and snarling of police dogs, as an officer yelled at Reed: "Come out from under the car or you're gonna get bit."

Officer Bovy testified that, after arresting Reed, the officer searched the ground around the Buick and found "a baggie of crystal ice" on the edge of the sidewalk toward the rear tire on the driver's side, within throwing distance of the car. Bovy testified the baggie "appeared to be recently put there. Like I said, there was quite a bit of frost that night. I got out with my flashlight out and looked at it closely and there was no frost on it. It wasn't damp or anything like that." Lab testing recorded .18 grams of methamphetamine in the baggie.

Searchers also found a glass methamphetamine pipe in the grass toward the street that appeared to be recently placed there, according to Bovy's testimony. When interviewed by Bovy at the police station, Reed said he fled because he didn't have a driver's license. Reed admitted smoking methamphetamine about an hour before the crash but denied the baggie picked up outside the Buick belonged to him.

In a three-count trial information, the State charged Reed with eluding, possession of methamphetamine, and driving while his license was revoked. His case went to trial on March 30, 2016, with Officer Bovy and two other police officers as the only witnesses.

During closing argument, Reed's attorney urged the jurors to evaluate specific frames of the dash cam video from the crash scene, asserting Officer Bovy planted the baggie of methamphetamine: "You see his hand go down and

place something on the ground." Defense counsel then focused on a segment of the video two minutes earlier when two officers walked on the same trajectory without noticing any evidence, scoffing, "Officer Bovy is luckier than any of the other officers, including officers that walk directly through that path." The defense attorney offered this appeal to the jury:

> Officer Bovy is upset that evening perhaps about the activity that Mr. Reed was involved in. He thinks he sees something go out the window, but he can't find it and none of the other officers can find it. And [Bovy] thinks [Reed's] done something wrong and [Bovy] doesn't want to let [Reed] get away with it, but that's not how we find the truth and do justice. Walking to the back of the vehicle, bending down, and laying something on the ground, that's not how we do justice.

The State returned fire in its rebuttal closing argument. The prosecutor first mused: "Officer Bovy has to be probably the worst corrupt officer ever according to the defense. . . . They say he planted that knowing full well there's a camera videotaping that area and he's gonna plant it right in front of a video." The prosecutor called the argument that Officer Bovy planted evidence "absolutely offensive and ridiculous" and complained that defense counsel did not "even ask [Bovy] about it" during cross-examination. The prosecutor told the jurors: "It goes to show you the sincerity of the argument."

The prosecutor then wove a rhetorical line suggesting Officer Bovy was being truthful because his testimony against Reed was not airtight. Critically, the prosecutor asserted:

> [Officer Bovy] never actually said he saw anything leave the [d]efendant's hand when he made a throwing motion. All he could say was a throwing motion; right? If you're gonna lie, say you saw something leave his hand. Why would a person who's gonna risk perjury, your career, do something like that in such a weak way? That's called candor. He's being honest.

Defense counsel objected, and the district court overruled the objection. The prosecutor continued:

> Officer Bovy didn't plant this. He's not that stupid, and if he did—if he was really going to plant it, he isn't going to do it this way. Why not put it in the [d]efendant's pocket? That's gonna be better. Why not do it when there's no camera rolling. That would be better. Why not lie about the meth pipe? Why not lie and say you actually saw something leave his hand? And that's the problem with their argument. The [d]efendant is guilty.

The prosecutor further argued: "So really, it's gonna come down to whether you believe Officer Bovy or you don't. Do you think he's a corrupt officer, or do you think he told the truth?"

After closing arguments and outside the presence of the jury, the district court explained its decision to overrule the defense objection:

> [M]y rulings stem from the fact that while we do need to be careful in terms of how we cast people's testimony, my bigger concern is typically when someone attempts to call someone a liar as opposed to attempts to simply say they felt their testimony was honest, straightforward, or had candor.

The jury returned verdicts finding Reed guilty of eluding, driving while barred, and possession of methamphetamine. On appeal, Reed challenges only his conviction for possession of methamphetamine.

## II.    Standard of Review

Our district courts have broad discretion when ruling on claims of prosecutorial misconduct; our review is for an abuse of that discretion. *State v. Plain*, ___ N.W.2d ___, ___, 2017 WL 2822482, at *2 (Iowa 2017). "We find an abuse of discretion only where there is misconduct and the defendant was so

prejudiced by the misconduct as to deprive him of a fair trial." *State v. Jacobs*, 607 N.W.2d 679, 689 (Iowa 2000).

### III.    Analysis of Reed's Prosecutorial Misconduct Claim

Iowa's seminal case on prosecutorial misconduct remains *State v. Graves*, 668 N.W.2d 860, 870 (Iowa 2003). *Graves* touted the unique advocacy role filled by prosecutors, who owe "a duty to the defendant as well as to the public." 668 N.W.2d at 870.

*Graves* preserved for prosecutors "some latitude during closing argument in analyzing the evidence admitted in the trial." *Id*. at 874 (quoting *State v. Phillips*, 226 N.W.2d 16, 19 (Iowa 1975)). In that vein, a prosecutor may argue reasonable inferences drawn from the evidence but may not express personal beliefs or personally vouch for the credibility of a State's witness. *Id*. (citing *State v. Williams*, 334 N.W.2d 742, 744 (Iowa 1983)). Among the misconduct identified in *Graves* were comments implying the prosecutor knew "something the jurors did not" about the motivations of a police-officer witness to tell the truth. *See id*. at 879 (citing *United States v. Boyd*, 54 F.3d 868, 871 (D.C. Cir. 1995) (holding prosecutor improperly vouched for police witnesses when she indicated in closing argument officers would not risk their careers by lying because this argument relied on evidence not in the record)).

But *Graves* recognized "prosecutorial misconduct does not automatically prejudice a defendant's right to a fair trial." *Id*. at 876. In deciding if a prosecutor's improper argument threatened a defendant's right to a fair trial, we consider several factors, including "(1) the severity and pervasiveness of the misconduct; (2) the significance of the misconduct to the central issues in the

case; (3) the strength of the State's evidence; (4) the use of cautionary instructions or other curative measures; and (5) the extent to which the defense invited the misconduct." *Id.* at 877. Subsequent cases have identified the strength of the State's case against the defendant as the most important factor. *See, e.g.*, *State v. Boggs*, 741 N.W.2d 492, 509 (Iowa 2007); *State v. Carey,* 709 N.W.2d 547, 559 (Iowa 2006).

Reed contends the prosecutor's closing rebuttal argument crossed into the realm of misconduct by vouching for the credibility of Officer Bovy. The offending statement, according to Reed, was the prosecutor's assurance to the jury that Bovy would not commit perjury or risk his career by telling a lie—in short, "[h]e's being honest."

In its appellee's brief, the State acknowledges our supreme court has disproved of "language suggesting the prosecutor has information that the jury does not, such as the risk of perjury or the loss of career." But the State contends the prosecutor's misconduct, or his error,[2] was not sufficiently prejudicial to warrant a new trial. The State asserts the trial prosecutor was "entitled to respond with some vigor" to the defense accusation that Officer Bovy planted the baggie of methamphetamine.

---

[2] Our supreme court recently explained the difference between misconduct and error by a prosecutor. Prosecutorial misconduct means an intentional violation of "a clear and unambiguous obligation or standard imposed by law, applicable rule or professional conduct," as well as reckless disregard of a duty to comply with an obligation or standard. *State v. Schlitter*, 881 N.W.2d 380, 394 (Iowa 2016) (citation omitted). Prosecutorial error covers instances of "poor judgment" and "mistake" and "excusable human error, despite the use of reasonable care." *Id.* (citation omitted). Given the clear standard announced in *Graves*, we find the prosecutor's closing argument here was more misconduct than error.

Reed weighs in on the prejudice issue, characterizing Officer Bovy's testimony as "very important to the State's case, making it very likely that the State's attorney vouching directly for his honesty could have a negative effect on the [d]efendant." Reed contends the district court abused its discretion by overruling his counsel's objection to the prosecutor's improper remarks during the closing rebuttal argument.

We start our analysis with the threshold question whether the prosecutor's remarks, which drew a spontaneous objection from defense counsel, were improper. We conclude the prosecutor's declaration that Officer Bovy was "being honest" because his career was on the line if he gave false testimony constituted impermissible vouching as outlined in *Graves*.[3] The State concedes as much in its appellate argument.

The contested question is whether the prosecutor's impermissible vouching for the police witness "prejudiced, inflamed or misled the jurors so as to prompt them to convict the defendant for reasons other than the evidence introduced at trial and the law as contained in the court's instructions." *See Graves*, 668 N.W.2d at 877. In Reed's case, the misconduct was limited to the prosecutor's closing rebuttal argument and was no doubt incited by the controversial defense theory that a police officer planted drug evidence.

But on the other side of the balance, the misconduct carried great significance for the central issue bearing on the possession-of-methamphetamine

---

[3] Also concerning are the prosecutor's repeated declarations in closing argument that "[t]he [d]efendant is guilty." These declarations were not consistently tied to evidence in the record, but seemed to suggest a personal opinion. Under our case law, prosecutors are "precluded from using argument to vouch personally as to a defendant's guilt." *See Williams*, 334 N.W.2d at 744.

count and the court's overruling of the defense objection blocked the possibility of any curative measures. The prosecutor told the jurors their verdict came down to whether they believed Officer Bovy. The State's primary evidence regarding possession was the baggie—either found or planted by the police officer near the Buick that Reed had been driving. Both sides argued plausible interpretations of what can be seen on the dash-cam video. When the prosecutor personally vouched for the officer's honesty rather than sticking to the evidence presented, Reed was denied a fair trial. *See State v. Martens*, 521 N.W.2d 768, 772 (Iowa Ct. App. 1994) (explaining that "vouching for a witness may induce the jury to trust the judgment of the prosecutor rather than their view of the evidence since the prosecutor's opinion carries the imprimatur of the Government").

We don't lightly find an abuse of discretion by the district court, which was called upon to rule on the defense objection in the moment. But we disagree with the district court's rationale that the prosecutor's argument was not objectionable because he vouched for the honesty of a State's witness rather than calling the defendant "a liar." Either misstep can result in a due-process violation depending on the application of the *Graves* factors. Had the district court sustained the defense objection, the opportunity would have arisen to caution the jury that the prosecutor had no inside information about the veracity of the police officer or about Reed's guilt. As the record stands, the impermissible vouching deprived Reed of a fair trial on his possession-of-methamphetamine charge. Accordingly, we reverse that conviction and remand for a new trial on that count of the trial information.

**REVERSED AND REMANDED.**